## WILBUR G. BELL *v.* STATE OF MARYLAND

[No. 949, September Term, 1973.]

*Decided August 16, 1974.*

The cause was argued before THOMPSON, GILBERT and DAVIDSON, JJ.

*James C. Cawood* for appellant.

*George A. Eichhorn, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, James G. Klair, Assistant Attorney General, Warren B. Duckett, Jr., State's Attorney for Anne Arundel County,* and *Frank R. Weathersbee, Assistant State's Attorney for Anne Arundel County,* on the brief, for appellee.

GILBERT, J., delivered the opinion of the Court.

Wilbur G. Bell, Bernard Peters and James S. Cromartie, Jr. were jointly tried and convicted at a non-jury trial before Judge Matthew S. Evans, in the Circuit Court for Anne Arundel County, of violation of the Controlled Dangerous Substances Law of this State.[1] Only the appellant Bell has appealed.[2]

Appellant assigns a pentad of reasons why the judgment of the Circuit Court should be reversed. He asserts:

> (1) The trial judge erred in not requiring the State to supply appellant with the identity of an informant "whose information led to a wiretap of a third party's house and ultimately to the wiretap of [appellant's] house. . ." when appellant proffered that if he knew the name of the informant it would

---

* Note: *Certiorari* denied, Court of Appeals of Maryland, October 24, 1974.

1. Bell was sentenced to six years imprisonment. The sentence is to be served concurrently with a six year term imposed in the United States District Court for the District of Maryland.

2. The record reflects that Cromartie entered an appeal on September 20, 1973, but dismissed the same on November 28, 1973. At that time the balance of the six year sentence was suspended, and he was placed on probation for a period of ten years.

probably enable appellant to demonstrate that the informant was a trespasser in the third party's home.

(2) Adequate steps were not taken by the police to minimize the interception of legitimate communications.

(3) The trial judge erred in continuing the case, over objection, so as to allow the State to serve upon appellant the contents of the wiretap.

(4) Appellant was denied a speedy trial.

(5) The *nolle pros.* of one count of a federal indictment, as the result of a plea of guilty to a lesser offense, precluded appellant's indictment and trial in a State court for the same crime.

As the result of a duly authorized wiretap, in Prince George's County, it was learned that appellant was engaged in the nefarious vending of proscribed narcotics. Acting upon that knowledge the State's Attorney for Anne Arundel County applied for and obtained an order of court authorizing the use of electronic equipment to intercept and record the telephonic wire communications of appellant and others. The wiretap order was issued and was in effect for the period of March 2, 1972 at 10:00 A.M. until 10:00 P.M. March 17, 1972. Thereafter the termination date and time were extended until 2:00 A.M. April 2, 1972, although the police terminated interception on March 31, 1972.

A factual recitation of appellant's involvement in the illicit narcotics traffic is not necessary to this opinion. It is enough to know that no attack is made on the sufficiency of the evidence, absent the assertion that the evidence was unlawfully obtained. We shall, therefore, discuss only such facts as are pertinent to this opinion, and only then as they relate to a particular issue posited by appellant.

I.

Appellant argues that the Prince George's County wiretap order was invalid because it "failed to show that the confidential sources [upon whose information the affidavit

in support of the application for the order was bottomed] were lawfully on the premises of the [third] person whose telephone was wiretapped." To bolster his contention that he should have been allowed to show that the informants were illegally upon the third person's property, and thus demonstrate that the Prince George's order was invalid, with the end result that the Anne Arundel order would also fall because of taint, the appellant quotes from *Everhart v. State*, 20 Md. App. 71, 315 A. 2d 80 (1974), where we said, at 93-94:

> "We reiterate that our holding is restricted to a constitutional finding that the probable cause affidavit was not facially insufficient, and that the warrant-issuing magistrate is not required to raise *sua sponte* possible constitutional problems. *We do not intimate what the answer might have been, had the appellant adequately raised at the suppression hearing, and adequately preserved for appellate review, an effort to look behind 'the four corners of the affidavit' in order to establish some primary taint, and then to apply the exclusionary rule to the ostensible fruits of that ostensible taint.* We recognize that the whole body of law grown up around the 'fruits of the poisonous tree' doctrine, on the one hand, and the discernible and almost tidal retreat from the exclusionary rule by the Supreme Court, on the other hand, are in essential collision. We will not try to predict how that collision may ultimately be resolved." (Footnote omitted). (Emphasis supplied).

Appellant did in the instant case, however, preserve the question of supposed primary taint for appellate review.

Before we may consider that issue, we must first determine the appellant's standing to object to the alleged intrusion against the third party. Obviously, if appellant cannot clear the standing hurdle, we need not consider the question of "primary taint" irrespective of its preservation for our review. The State asserts that appellant lacks standing, but we disagree.

The answer to the question of standing is found in 18 U.S.C. § 2518(10) (a) and § 2510(11). Section 2518(10) (a) provides that an aggrieved party may, in any trial, hearing or proceeding, move to suppress the contents of any intercepted wire or oral communication or any evidence that is derivative therefrom. Under § 2510(11) an aggrieved party is anyone who was a party to any intercepted wire or oral communication. Patently, appellant, a party to an intercepted wire communication, meets the definition of an "aggrieved person" under § 2510(11) and thus has standing to challenge the validity of the wiretap order of the Circuit Court for Prince George's County. There is, of course, no question of the applicability of 18 U.S.C. §§ 2510 - 2520 to Maryland. *See State v. Siegel,* 13 Md. App. 444, 285 A. 2d 671 (1971), *aff'd* 266 Md. 256, 292 A. 2d 86 (1972).

We turn now to a discussion of the merits of appellant's contention. The application for the wiretap order in Prince George's County provided:

"On January Second, Nineteen Hundred and Seventy-Two, your affiant was contacted by a reliable confidential source of information. Your affiant has personally known the source for a period of over six months and during this period time the source has given information to your affiant in regards to persons violating the Controlled Dangerous Substance Laws of the State of Maryland. That persons arrested based on the source's information have been convicted and that the source has never given information which proved to be false, also that the said information has led to the recovery of quantities of Controlled Dangerous Substances. Hereinafter, in this affidavit, let the said source be referred to as source number one.

That on January Second, Nineteen Hundred and Seventy-Two, source number one advised your affiant that one Andrew William Townsley and his alleged wife, Cynthia Snyder, were residing at 4117 51st Street, apartment #302, Bladensburg, Prince

George's County, Maryland. That both Mr. Townsley and Mrs. Snyder were to his personal knowledge through observation made during the last of January, 1972, presently is [sic] engaged in a conspiracy to violate the Controlled Dangerous Substance Laws of the State of Maryland with an unknown colored male about 28 to 30 years of age, 6-02, 190 pounds, medium complexion, residing somewhere in Annapolis, Maryland, and sometimes referred to as Bell.

That the reliability of this information is to be substantiated by the fact that *during the week of January 16th, 1972, your affiant met with source #1, conducted a strip search of source #1 and its personal belongings at which time no narcotics were found. Your affiant then gave source #1 an amount of money and instructed source #1 to go to Mr. Townsley's residence and purchase Heroin. That said source then proceeded to 4117 51st Street, apartment #302, Bladensburg, Prince George's County, Maryland, while your affiant personally observed source #1. Source #1 went to and came from Mr. Townsley's residence without stopping or coming in contact with anyone or thing except while inside Mr. Townsley's residence where your affiant was unable to see source #1. That when source #1 returned to your affiant, source #1 turned over to your affiant, an aluminum foil package containing a white powdery substance. That said white powdery substance was field tested by your affiant with a Marquis test kit for Heroin. That said white powdery substance tested positive to Heroin and that your affiant believes it to be, in fact, Heroin.*

Further adding to the reliability of source #1's information is the fact that Andrew William Townsley was arrested on September 14th, 1971 by members of the Prince George's County Vice Control Section. Andrew Townsley was charged on

that date with possession of a Controlled Dangerous Substance, to wit: Heroin. Also on September 14th, 1971, your affiant personally viewed hypodermic needle marks on the inside portion of Mr. Townsley's arms. Through the past experiences of your affiant, that the marks lead your affiant to believe that Mr. Townsley was, in fact, a Heroin user.

That during the week of January 16th, 1972, your affiant was contacted by another confidential source of information, who has given information to your affiant constantly for the past two and a half months. That the information has led to the arrests of over five persons involved in violations of the Controlled Dangerous Substance Laws of the State of Maryland, and recovery of quantities of Controlled Dangerous Substances. That none of the information given to your affiant by the second source has been found to be false. Hereinafter, in this affidavit, your affiant will refer to the second source as source #2. *Source #2 related to your affiant that it has recently been present inside apartment #302 at 4117 51st Street, Bladensburg, Prince George's County, Maryland during the last week of January, 1972, and overheard Mr. Townsley better known to source #2 as Billy, talking with various persons over his telephone about buying and selling Heroin.*

Further related by source #2 to your affiant was that Mr. Townsley was a wholesale dealer, dealing in quantities quarter ounce and up. That the cost ranged from $100.00 to and in excess of $500.00. That this is known to source #2 by its observations. Source #2 also stated that it has heard Mr. Townsley order as much as four ounces of Heroin from an unknown person through use of his telephone inside his residence and that the exact amount, the date, the time, and the locations to meet person for the receiving and delivering of

Heroin are made over Mr. Townsley's telephone and that Mr. Townsley's telephone number is 779-3042. That this information from source #2 has been confirmed through a separate source, source #1 and further proven through your affiant by a check with The Chesapeake and Potomac Telephone Company that 4117 51st Street, apartment #302, Bladensburg, Prince George's County, Maryland is serviced by telephone number 779-3042. This is a number which rings at 4117 51st Street, Bladensburg, Prince George's County, Maryland and is rented to Cynthia Snyder." (Emphasis supplied).

Appellant argues that if he knew the identity of Informant #2, then appellant might be able to show that Informant #2 was unlawfully on the premises of Townsley's residence when he overheard the appellant talking on the telephone "with various persons . . . about buying and selling Heroin." Appellant, however, overlooks the facts that are obvious from the affidavit. It is apparent that the bulk of the information supplied by Informant #1 and the "controlled buy" made by Informant #1, both occurred at a point in time prior to Informant #2's presence in Townsley's apartment. It is clear from a reading of the affidavit that the "controlled buy" took place during the week of January 16, 1972. Informant #2 overheard the telephone conversation "during the last week of January, 1972." Patently, the week of January 16, 1972 preceded the "last week of January, 1972."

It is apparent from a perusal of the affidavit made in support of the application for the order that the information supplied by source #2 was redundant. Informant #1 met the standards of reliability-credibility and demonstrated an underlying basis of knowledge. *Aguilar v. Texas,* 378 U. S. 108, 84 S. Ct. 1509, 12 L.Ed.2d 723 (1964). *See also Washburn v. State,* 19 Md. App. 187, 310 A. 2d 176 (1973); *Watson and Harris v. State,* 18 Md. App. 184, 306 A. 2d 599 (1973); *Thompson v. State,* 16 Md. App. 560, 298 A. 2d 458 (1973); *Lomax v. State,* 16 Md. App. 502, 298 A. 2d 454 (1973);

*German v. State,* 14 Md. App. 120, 286 A. 2d 171 (1972); *Dawson v. State,* 11 Md. App. 694, 276 A. 2d 680 (1971). Moreover, even absent *Aguilar,* the strip search of Informant #1 and the "controlled buy" made under the personal observation of the affiant, furnished, in and of itself, probable cause for the issuance of the warrant. *Hignut v. State,* 17 Md. App. 399, 412, 303 A. 2d 173 (1973). In *Hignut,* Judge Moylan, writing for the majority, said:

> "So long as the controls are adequate, the 'controlled buy' alone may well establish probable cause to search a suspect premises, let alone verify from scratch an informant's otherwise unestablished 'credibility'."

Even if we assume that Informant #2 was a police officer or police agent, as appellant suggests and unlawfully upon the premises of Townsley, the informant's unlawful presence, in this case, neither adds to nor subtracts from the probable cause shown in the affidavit. The information from Informant #2 is, at best, mere surplusage.

## II.

Appellant next argues that the State failed to minimize, in regard to the third party tap, the interception of legitimate communications. There was, however, no allegation that the police utterly flouted the minimization order. *Spease v. State,* 21 Md. App. 269, 319 A. 2d 560 (1974). In *Spease,* we said:

> "The great weight of authority and, in our judgment, the sounder reasoning maintains that the failure to minimize requires only the suppression of those conversations which should not have been seized and not the suppression of those conversations which were appropriately seized."

*Spease* is dispositive of appellant's contention.

## III.

Appellant's third assertion is grounded upon 18 U.S.C. § 2518(9) (1968), coupled with his interpretation of the words "ten days before the trial" as used in the statute. 18 U.S.C. § 2518(9) provides:

"The contents of any intercepted wire or oral communication or evidence derived therefrom shall not be received in evidence or otherwise disclosed in any trial, hearing, or other proceeding in a Federal or State court unless each party, not less than ten days before the trial, hearing, or proceeding, has been furnished with a copy of the court order, and accompanying application, under which the interception was authorized or approved. This ten-day period may be waived by the judge if he finds that it was not possible to furnish the party with the above information ten days before the trial, hearing, or proceeding and that the party will not be prejudiced by the delay in receiving such information."

When the case was called on June 26, 1973 the appellant made a series of motions, all calculated to terminate the case short of actual trial. After all motions were overruled the State offered a series of search warrants, affidavits, applications, and tapes for identification only. An objection was made upon the basis that the State had not complied with the statutory mandate of delivery to the various defendants the "contents of any intercepted wire or oral communication." It is clear from the record that the appellant, Bell, had "received them" within the prescribed period. Another defendant, Cromartie, however, did not receive them. Judge Evans then continued the case so as to allow the State to comply with the provisions of 18 U.S.C. § 2518(9).

Inasmuch as the appellant had received the information required to be furnished him by § 2518(9), he cannot be heard to complain that the rights of a codefendant were abused or neglected. In short, appellant may not obtain

shelter under a codefendant's umbrella of constitutional protection.

## IV.

Appellant contends that he was denied his constitutional right to a speedy trial. He points to the delay of approximately fourteen months between indictment and trial, concludes that the delay is of constitutional dimension and reasons that the delay of constitutional dimension requires the dismissal of the indictment.

Mr. Justice Powell in *Barker v. Wingo*, 407 U. S. 514, 92 S. Ct. 2182, 33 L.Ed.2d 101 (1972) wrote, at 519, 521:

> "The right to a speedy trial is generically different from any of the other rights enshrined in the Constitution for the protection of the accused.
>
> * * *
>
> Thus, unlike the right to counsel or the right to be free from compelled self-incrimination, deprivation of the right to speedy trial does not *per se* prejudice the accused's ability to defend himself."

In *Hunter v. State*, 16 Md. App. 306, 295 A. 2d 779 (1972) we stated, at 310:

> "The right to a speedy trial is relative and the time within which the trial must be had depends on the facts and circumstances of each particular case. *Barker v. Wingo, supra; State v. Lawless*, 13 Md. App. 220, 227, 283 A. 2d 160 (1971); *Stevenson v. State*, 4 Md. App. 1, 10-11, 241 A. 2d 174 (1968). The facts and circumstances in each particular case should be viewed in the light of four factors: (1) The length of the delay, (2) The reason for the delay, (3) Prejudice to the accused, and (4) Waiver by the accused."

The record reveals that when the issue of the alleged

denial of a speedy trial was argued before Judge Evans appellant's then counsel stated:

". . . I have no facts available to me under all the circumstances to show specifically any particular or specific indication of prejudice but when a case drags on for over a year with respect to the three defendants, . . ., on its face the defendants have been prejudiced by the mere fact of the delay with respect to the availability of witnesses, availability of recollection to present defenses and . . . the delay of over a year from the time of the indictment to the time of trial is prejudicial. . . ." [3]

Justice Powell in *Barker v. Wingo, supra* at 532-33, said on the subject of prejudice:

"Prejudice, of course, should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect. This Court has identified three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system. If witnesses die or disappear during a delay, the prejudice is obvious. There is also prejudice if defense witnesses are unable to recall accurately events of the distant past. Loss of memory, however, is not always reflected in the record because what has been forgotten can rarely be shown.

. . . [I]f a defendant is locked up, he is hindered in his ability to gather evidence, contact witnesses,

---

**3.** The time is calculated from "the date of the commencement of a prosecution by way of arrest, warrant, information or indictment, whichever shall first occur. . . ." Hunter v. State, *supra,* at 311. *See also* United States v. Marion, 404 U. S. 307, 92 S. Ct. 455, 30 L.Ed.2d 468 (1971).

or otherwise prepare his defense." (Footnotes omitted).

In the instant case appellant offered no more than a bald allegation to support his claim of prejudice. There is nothing in the record demonstrating that a witness or witnesses were unavailable, nor is there anything to show that a defense witness was suffering from a diminution of memory, occasioned by the delay. Moreover, our constitutionally mandated, independent review of the record fails to indicate a scintilla of evidence that appellant's ability to defend himself against the State's charges was in anywise impaired. The record indicates that appellant was on bail until the date of trial, *i.e.*, June 26, 1973, so that, obviously, he was not precluded from assisting in his defense. Succinctly stated, prejudice has not been shown by appellant.

V.

Lastly, appellant, while admitting that he has not been subjected to "double jeopardy in the formal sense", nevertheless argues that "fundamental fairness" requires that he not be tried in the State court for offenses which were also violative of Federal law and for which he received a sentence as a result of plea bargaining. Appellant asserts that "he ought not be deprived of his partial victory in bargaining away a more serious charge for his plea to a less serious one."

The Supreme Court of the United States in *Bartkus v. Illinois*, 359 U. S. 121, 79 S. Ct. 676, 3 L.Ed.2d 684 (1959), the late Mr. Justice Frankfurter writing for the majority of the Court,[4] quoted with approval from *Moore v. Illinois*, 55 U. S. (14 How.) 13, 14 L. Ed. 306 (1852), wherein the Court said, at 20:

"Every citizen of the United States is also a

---

**4.** The late Mr. Justice Black filed a dissent in which he was joined by Chief Justice Warren and Justice Douglas. Justice Brennan filed a separate dissent in which he was also joined by the Chief Justice and Justice Douglas.

citizen of a State or territory. He may be said to owe allegiance to two sovereigns, and may be liable to punishment for an infraction of the laws of either. The same act may be an offence or transgression of the laws of both."

*Moore v. Illinois, supra,* went on to state:

"That either or both may (if they see fit) punish such an offender, cannot be doubted. Yet it cannot be truly averred that the offender has been twice punished for the same offence; but only that by one act he has committed two offences, for each of which he is justly punishable. He could not plead the punishment by one in bar to a conviction by the other."

Justice Frankfurter observed that the Court had in a dozen cases between *Moore v. Illinois* and *United States v. Lanza,* 260 U. S. 377, 43 S. Ct. 141, 67 L. Ed. 314 (1922) reaffirmed the principle that successive State and Federal prosecutions are not violative of the Fifth Amendment and that "[p]recedent, experience, and reason alike support the conclusion that [one tried by the State and the Federal Government in successive trials for violation of their respective statutes] has not been deprived of due process of law . . . ." *See also Melville v. State,* 10 Md. App. 118, 268 A. 2d 497 (1970); *State v. Fletcher,* 26 Ohio St. 2d 221, 271 N.E.2d 567 (1971).

Appellant's contention is without merit.

*Judgments affirmed.*