# SAMUEL CLECKLEY *v.* STATE OF MARYLAND

[No. 239, September Term, 1978.]

*Decided April 10, 1979.*

The cause was argued before THOMPSON, MASON and LISS, JJ.

*W. Michel Pierson, Assigned Public Defender,* and *William H. Murphy, Jr.,* for appellant.

*Paul T. Cuzmanes, Assistant Attorney General,* with whom were *Francis Bill Burch, Attorney General, William A. Swisher, State's Attorney for Baltimore City,* and *David Katz, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

MASON, J., delivered the opinion of the Court.

Sam Cleckley, appellant, was convicted by a jury in the Criminal Court of Baltimore on five counts of robbery. On appeal appellant contends: (1) That the trial court erred in admitting evidence seized from three pocketbooks during a warrantless search; (2) that he was denied a speedy trial; (3) that the evidence was insufficient to sustain his convictions.

On the afternoon of January 10, 1976, at 1:40 p.m., a man, accompanied by a woman, entered Mondie's Beauty Shop in Baltimore City. After producing a pistol, the man robbed Sarah Mondie, owner of the shop, and four other females of money and jewelry valued at several thousand dollars.

Later the same day around 6:30 p.m., a red Buick with Maryland license tags, operated by appellant, was illegally parked on 8th Avenue and 126th Street in New York City. As Officer Vincent Guzzo and his partner, Officer Peter Cotroneo, approached the vehicle to give the operator a summons, the vehicle pulled off from the curb without lights. While the vehicle was stopped at a red light, Officer Guzzo approached the car from the driver's side and asked appellant for his driver's license and registration card. Whereupon appellant gave the officer his license and a rental receipt for the vehicle he was driving. Officer Cotroneo, who had approached the car from the passenger side, observed Raymond Cleckley, appellant's nephew, in the back seat acting a little "fidgety", *i.e.,* moving his hands and shifting his feet. When Officer Cotroneo directed the beam of his flashlight to the floor in the rear of the car, he observed the end of an automatic revolver with the hammer cocked. At this point, he drew his service revolver and ordered Raymond Cleckley not to move. Officer Guzzo in the meantime called for assistance. On arrival of other officers, appellant was removed from the car and frisked. A .22 caliber pistol was recovered from his pocket. Appellant, Raymond Cleckley, and a male passenger who was in the front seat of the vehicle, were all arrested and transported to the police station.

Officer Guzzo took custody of appellant's vehicle and while driving it to the station house noticed three ladies' purses on the front seat. After parking the vehicle, he opened them and

observed their contents. The officer then removed the handbags from the car and took them into the station house. After advising appellant of his *Miranda* rights he opened one of the purses which contained the identification of one Jacqueline Gardner. Appellant, when asked who she was, said she was his "old lady."

After booking appellant on the handgun charge, the officer telephoned Jacqueline Gardner regarding her purse. She told him she had been a victim of a robbery earlier that day, and referred him to a Detective Cole of the Baltimore City Police Department who was handling the case. Soon thereafter the officer inventoried the contents of the three purses.

At trial, the .22 caliber revolver, which had been removed from appellant's pocket, as well as the three purses and their contents were introduced into evidence against appellant. The victims of the robberies identified the purses and the items contained therein. The .22 caliber revolver was identified by Sarah Mondie as belonging to her. In addition, there was testimony that at approximately 1:45 p.m., on the day of the robbery, a red Buick with its motor running and with a man at the wheel, was observed parked near Mondie's Beauty Shop. The State also introduced evidence showing appellant had leased the red Buick he was driving in New York from Avis Car Rental in Baltimore. Further, Sarah Mondie testified that Raymond Cleckley was the man who had robbed her beauty shop.

Appellant argues that the purses and the property contained therein should not have been admitted into evidence because they were obtained as the result of an illegal search. On the other hand, the State argues that these items were properly admitted into evidence because the actions of Officer Guzzo did not constitute a Fourth Amendment intrusion, but amounted to no more than a bonafide taking of an inventory.

## I.

In determining whether the search of the pocketbooks was an impermissible intrusion of Fourth Amendment values or the bonafide taking of an inventory, we are guided by the case

of *South Dakota v. Opperman,* 428 U. S. 364 (1976) where the Supreme Court stated:

"When vehicles are impounded, local police departments generally follow a *routine practice of securing and inventorying the automobiles' contents.* These procedures developed in response to three distinct needs: the protection of the owner's property while it remains in police custody; the protection of the police against claims or disputes over lost or stolen property; and the protection of the police from potential danger." (Emphasis supplied) (Citations omitted).

In *Duncan and Smith v. State,* 281 Md. 247, 259 (1977) the court of appeals held:

"[P]olice may, without regard to probable cause, and, thus, absent a warrant, constitutionally enter an automobile and unlocked compartments therein, and inventory and seize articles found, provided the vehicle had been otherwise legally taken into police custody and the *inventorying was pursuant to a standard police procedure."* (Emphasis supplied)

The principle exposited by these cases is that inventory searches must be conducted in a non-investigative manner, as part of a standard, routine procedure and not conducted to discover evidence of crimes. *See Boone v. State,* 39 Md. App. 20, 30 (1978), *affirmed with modification, State v. Boone,* 284 Md. 1 (1978). *See also Waine v. State,* 37 Md. App. 22 (1977).

We think the following testimony of Officer Guzzo on cross-examination, at the suppression hearing, clearly shows the purpose for which the search was conducted:

"Q Can you explain to the Court why you did not place the purses that you found on the front seat of the car in the trunk and lock the trunk?

A Well, we were trying to find someone who knew to verify who the ownership of it was.

Q Why?

A It appeared to be a few rings of considerable cost.

Q These purses were closed when you first observed them on the front seat?

A Yes.

Q And after you found them you opened them?

A Yes.

Q You did this before they were inventoried?

A I opened them before I removed them from the car.

Q You had your inventory sheet out at the time you were opening the purses?

A No.

Q For what purpose did you open the purses before you removed them from the car?

A I opened the purses to see what their contents were.

Q Why did you do that?

A I was interested to know.

Q Why?

A Because my suspicions were aroused. The Defendant was found to be in possession of a gun and the purses on the front seat.

Q You were looking for incriminating evidence?

A No, sir.

Q What do you mean when you say your suspicions were aroused? Suspicions of what?

A Suspicions of what the women's purses were doing there at that time on the front seat of the car.

Q What specifically were you suspicious about?

A I was suspicious whether the items belonged to the occupants of the car.

Q When you saw the purses the first time in the car?

A Yes.

Q  You thought that it was the result of a robbery or stick up or purse snatching?

A  Yes.

* * *

Q  There is no typical inventory of a person's property when you routinely impound a car?

A  No.

Q  It was the result of an exploratory act on your part which led you to the conclusion that the Defendant might be in possession of incriminating evidence.

MR. KATZ: Objection.

THE COURT: Overruled.

THE WITNESS: Yes, sir."

Based on our independent examination of the evidence in the record, as we are required to do, *Walker v. State,* 12 Md. App. 684 (1971), we think it clear that the challenged search in this case was not conducted pursuant to a standard police procedure of securing and inventorying property under a community care-taking function. Since this search was "investigative" in nature and conducted for the purpose of discovering evidence of a crime, it exceeded the scope of a bonafide inventory search.

Inasmuch as the only theory upon which the challenged items could possibly have been admitted into evidence consistent with Fourth Amendment guarantees was that of a bonafide inventory search, the further contention of the State that the search was valid under the "plain view" doctrine is without merit.

In *State v. Wilson,* 279 Md. 189 (1977) while executing a valid search warrant for narcotics, one of the officers observed twenty to twenty-five electrical appliances, such as televisions and stereos, in one of the rooms. He "looked over" these items and "jotted down the serial numbers for all of them." *Id.* at 192. The officer later checked the serial numbers through a national computer system which lists stolen equipment and found one of the items to be stolen.

The State sought to justify the warrantless seizure of the serial numbers on the grounds of the "plain view" exception to the warrant requirement. Quoting from *Coolidge v. New Hampshire,* 403 U. S. 443 (1971), the court summarized the "plain view" doctrine:

> "This doctrine serves to supplement a previously justified intrusion, such as a search warrant for other property, and permits a warrantless seizure. The exception, on the other hand, may not be used to expand a justified, but limited, intrusion into a general exploratory search of a person's belongings until something incriminating at last emerges. To confine the exception within these boundaries, the Court prohibited the use of any evidence seized outside the warrant unless (1) the police have a prior justification for the intrusion; (2) they find the evidence in plain view; (3) they find it inadvertently; and (4) it is 'immediately apparent to the police that they have evidence before them, . . . .' " (Citations omitted). *Id.* at 194-195.

The court noted that the fourth element "amounts to a requirement that the police have probable cause to believe the evidence is incriminating before they seize it. . . . Stated another way, to be subject to seizure, the object must be one for which the police could have obtained a warrant because they had probable cause." *Id.* at 195.

In *Boone v. State, supra,* a member of the Prince George's County Sheriff's Department assigned to the Eviction Squad, went to Boone's apartment to execute a warrant of restitution. Before removing Boone's property from the apartment to the street, the Deputy Sheriff conducted a search of the premises for contraband, money or weapons which were not normally placed on the street. During this search he found a checkbook and several identification cards belonging to one Gale Acevedo. He also found credit cards belonging to other persons. The Sheriff telephoned Ms. Acevedo and she informed him that her purse had been stolen.

As a consequence, the Sheriff contacted the police and turned these items over to them. This court held:

"We think *Wilson* is dispositive of this issue. Mach clearly did not have probable cause to believe the credit cards were incriminating before he seized them. In fact, he testified that he had no knowledge that the cards were stolen. The presence of credit cards bearing several different names creates 'no more than a mere suspicion that any of the [credit cards] were stolen.' Like *Wilson,* the incriminating nature of the evidence became apparent only after the seizure. Accordingly, we find that the seizure was illegal." *Id.* at 33.

The court of appeals in *State v. Boone,* 284 Md. 1 (1978) in affirming this court, held:

"Whether we regard the credit cards as the 'fruit of crime' or 'mere evidence,' the record fails to show that the Deputy Sheriff had probable cause to seize them. We are in full accord with the findings of the Court of Special Appeals:

\* \* \*

"We hold that the seizure of the credit cards was not justified under the plain view doctrine." *Id.* at 11.

In the present case, Officer Guzzo clearly did not have probable cause to believe the purses were incriminating before he seized them. He had no knowledge of the Baltimore robberies, nor did he know what was inside the purses. Although finding three ladies' handbags in the car where three men had just been arrested for illegal possession of handguns may have aroused the officer's suspicion, the incriminating nature of the evidence became apparent only after the search and the telephone call to one of the victims. The State cannot buttress its probable cause theory on the result of the search and the information received from the victim. Accordingly, we hold the search was not justified under the "plain view" doctrine, and that the trial court erred

in not suppressing this evidence. Furthermore, we cannot say that the admission into evidence of the handbags and the property contained therein was not prejudicial or harmless error beyond a reasonable doubt. *Dorsey v. State,* 276 Md. 638 (1976).

## II.

The contention of the appellant that he was denied a right to a speedy trial is without substance and warrants little discussion.

Appellant was arrested in New York on January 10, 1976. He was subsequently convicted and sentenced for a handgun violation. On January 30, 1976, an indictment was filed charging him with the Mondie Beauty Shop robberies. Although a formal request for his extradition was sent to the New York authorities on March 5, 1976, the records do not show the reason he was not extradited. On October 26, 1976, appellant filed a *pro se* motion to dismiss the indictment for lack of a speedy trial. He was returned to Maryland on December 31, 1976, and his trial was scheduled for February 16, 1977. At the request of appellant's attorney the trial date was re-scheduled to April 19, 1977.

In order to determine whether the appellant has been denied a speedy trial we must, in making our independent constitutional appraisal, engage in a four factor balancing test as delineated by the Supreme Court in *Barker v. Wingo,* 407 U. S. 514 (1972). The four factors are: (1) The length of the delay; (2) reason for the delay; (3) the defendant's assertion of rights; (4) prejudice to the defendant.

After applying each of the four factors set forth in *Barker, supra,* to the facts in this case, we conclude that the appellant's right to a speedy trial was not denied.

## III.

The final argument of appellant that the evidence was insufficient to sustain his conviction is equally without merit.

This court has stated:

> "In a jury trial, the test as to whether the evidence was sufficient in law to permit the trial judge properly to deny Appellant's motion for a judgment of acquittal and to submit the case to the jury is whether the admissible evidence adduced at the trial either showed directly, or circumstantially, or supported a rational inference of, the facts to be proved from which a jury could fairly be convinced, beyond a reasonable doubt, of the Appellant's guilt of the offense charged. *Williams v. State,* 5 Md. App. 450, 459; *Metz v. State,* 9 Md. App. 15, 23."

*McCree v. State,* 33 Md. App. 82, 86 (1976).

Applying the above test to the present case, we conclude that the evidence adduced at the trial, including the pocketbooks and the items contained therein which went before the jury, was sufficient to sustain appellant's convictions. Consistent with the court of appeals' holding in *State v. Boone, supra,* we shall remand for a new trial. "A re-trial is not constitutionally proscribed when judgment is reversed on an appellate court's determination that evidence was erroneously admitted, . . .". *Id.* at 17.

> *Judgments reversed.*
> *Case remanded for a new trial.*
> *Costs to be paid by the Mayor and*
> *City Council of Baltimore.*