496 A.2d 665

**Erquies C. BAILEY**

v.

**STATE of Maryland.**

**No. 2 (Adv.), Sept. Term, 1985.**

Court of Appeals of Maryland.

Sept. 6, 1985.

Sherrie R. Berger, Asst. Public Defender, Baltimore (Alan H. Murrell, Public Defender, Baltimore, on brief), for appellant.

Carmina Szunyog Hughes, Asst. Atty. Gen., Baltimore (Stephen H. Sachs, Atty. Gen. and Stephanie J. Lane, Asst. Atty. Gen., Baltimore, on brief), for appellee.

Argued before MURPHY, C.J., SMITH, ELDRIDGE, COLE, RODOWSKY and McAULIFFE, JJ., and W. ALBERT MENCHINE, Associate Judge of the Court of Special Appeals (retired), Specially Assigned.

RODOWSKY, Judge.

Our primary reason for granting certiorari in this multiple issues appeal was to consider an aspect of discovery in criminal causes. That question is whether oral statements which the State intended to use at trial and which had been made by the defendant to an out-of-state police officer were "statements made by the defendant to a State agent" within the meaning of former Maryland Rule 741 b 2 and present MD. R. 4–263(b)(2). As explained below, we shall hold that the statements made to the out-of-state police officer in this case were discoverable by the defendant and that the other points raised by Bailey are without merit.

(1)

█ Appellant, Erquies C. Bailey (Bailey), was charged on January 27, 1984, by criminal information with, *inter alia,* robbery with a deadly weapon committed on September 29, 1983, in Baltimore City. Property alleged to have been taken from the victim included a 1967 Ford Mustang automobile. Bailey and a female companion were arrested at approximately 10:20 p.m. that same day in possession of the Mustang at a point on the New Jersey Turnpike 72 miles north of the Delaware Memorial Bridge. The arresting officer was Trooper Scott W. Jenkins (Jenkins) of the New Jersey State Police.

In a disclosure filing of February 16, 1984, the State said that Bailey had made no statement, oral or written, known to the State at that time. Listed among the witnesses whom the State intended to call was "Trpr. S. Jenkins—Md. State Police, New Brunswick Barrack 'D.'" On February 21, 1984, the accused formally requested "the substance of each oral statement" and "a copy of all reports of each oral statement made by the defendant to a State agent which the State intends to use at a hearing or trial."[1] The State

---

1. This request tracked the language of § b 2 of the then applicable discovery rule for criminal causes, Md.R. 741. The portions of that rule pertinent to the instant case read as follows:
   Rule 741. Discovery and Inspection.
   a. *Disclosure Without Request.*
   Without the necessity of a request by the defendant, the State's Attorney shall furnish to the defendant:
   . . . .
   2. Any relevant material or information regarding: (a) specific searches and seizures, wire taps and eavesdropping, (b) the acquisition of statements made by the defendant, and (c) pretrial identification of the defendant by a witness for the State.
   3. The State's Attorney's obligations under this section extend to material and information in the possession or control of members of his staff and of any others who have participated in the investigation or evaluation of the case and who either regularly report or with reference to the particular case have reported to his office.
   b. *Discovery by the Defendant.*
   Upon the request of the defendant, the State shall:
   . . . .

did not respond, thereby leaving unmodified its prior position that Bailey had made no statement.

At trial, when the prosecutor in his opening statement began to describe a prearrest conversation between Bailey and Trooper Jenkins, defense counsel objected, based upon the State's representation in discovery that there was no statement. The court ruled that the New Jersey trooper was not a "State agent" under Md.R. 741, and he would be treated as a private citizen.

Trooper Jenkins subsequently gave evidence over objection. He described observing the Mustang, apparently disabled, on the northbound shoulder of the turnpike and stopping to render assistance. Bailey, using the car's keys, could not start it and asked Trooper Jenkins to radio for a tow truck. When Jenkins asked Bailey for identification and for the vehicle's registration, Bailey said that he and his companion were hitch-hikers and that the car's owner was seeking help at the rest stop across the highway. Jenkins described other factors leading up to the arrest of Bailey, including Jenkins' unsuccessful inquiries made at the rest stop concerning the supposed owner of the Mustang.

A jury found Bailey guilty of robbery with a deadly weapon. At the hearing on a motion for new trial, the prosecutor advised the court that he became aware of

---

2. Statements of the Defendant.
As to all statements made by the defendant to a State agent which the State intends to use at a hearing or trial, furnish the defendant: (a) a copy of each written or recorded statement and (b) the substance of each oral statement and a copy of all reports of each oral statement.

. . . .

f. *Continuing Duty to Disclose.*
If, subsequent to compliance with a request made under this Rule or with any order compelling discovery, a party discovers additional matter previously requested and required to be furnished, he shall promptly furnish the matter to the other party or his counsel. If the additional matter is discovered during trial, in addition to furnishing the matter promptly to the other party or his counsel, he shall notify the court that the matter is being furnished to the other party.

Bailey's statements to Jenkins a "couple of days" prior to the trial when he interviewed Jenkins, who had brought the New Jersey offense report with him to Baltimore.

The motion for new trial was denied; final judgment was entered; Bailey appealed; and we issued certiorari on our own motion prior to consideration of the case by the Court of Special Appeals.

Bailey submits that the trial court erred in holding that there was no discovery violation. He seeks reversal as the cure. Bailey is correct on the first step of this submission.

Under Md.R. 741's structure, § a (now MD.R. 4–263(a)) requires certain disclosures to be made by the State without the necessity of a request by the accused. These disclosures include "relevant material or information regarding . . . the acquisition of statements made by the" accused. Section b of Md.R. 741 (now MD.R. 4–263(b)) addresses matters discoverable on request by the accused, including the substance of each oral statement "made by the defendant to a State agent which the State intends to use at a hearing or trial. . . ." All the objections made by Bailey in the instant case were based on Md.R. 741 b. Hence the trial court had to decide whether Trooper Jenkins was a "State agent."

Md.R. 741 b cannot, however, be read in isolation. Our prior cases have explained that there is an interrelationship between §§ a and b of the rule and that the automatic disclosure required by § a is designed to force the accused to file any motions to suppress in advance of trial on the merits. *See Jennings v. State,* 303 Md. 72, 492 A.2d 295 (1985); *Warrick v. State,* 302 Md. 162, 486 A.2d 189 (1985); *White v. State,* 300 Md. 719, 481 A.2d 201 (1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 1779, 84 L.Ed.2d 837 (1985). Md.R. 741 a 3 provides that "[t]he State's Attorney's obligations under this section extend to material and information in the possession or control of . . . any others who have participated in the investigation . . . of the case and who . . . with reference to the particular case have reported to his

office." That scope provision covers Trooper Jenkins in the instant case.

With respect to the discovery of the substance of oral statements and of reports containing oral statements, the words, "State agent," in Md.R. 741 b 2 are not to be read more narrowly than the persons referred to in Md.R. 741 a 3 as "any others who have participated in the investigation" and who "with reference to the particular case have reported to [the State's Attorney's] office." Otherwise, the purpose of § a is defeated where agents of a sovereign, other than Maryland, have been involved in investigating the case. Following *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081, *reh'g denied,* 368 U.S. 871, 82 S.Ct. 23, 7 L.Ed.2d 72 (1961), *modified, United States v. Leon,* —— U.S. ——, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), motions by defendants in criminal cases to suppress potential evidence have to a great extent rested on alleged violations of federal constitutional rights and on an invocation of the exclusionary rule as the remedy. From the standpoint of suppression it is immaterial whether a violation of a federal constitutional right was committed by an agent of Maryland or by an agent of some other sovereign.[2] If, as the State contends here, § b excludes the agents of a sovereign other than Maryland, the State would be obliged by § a to disclose the circumstances surrounding the obtaining of a statement, but the accused could not obtain the substance of that statement under § b. Thus, in cases involving agents of other sovereigns, counsel for the accused might not, until trial, have the information needed for a decision whether to move to suppress. This result conflicts with the design of Md.R. 741 to minimize suppression motions during the course of trial.

---

**2.** Maryland appellate cases reflecting motions to suppress based on conduct attributed to agents of other sovereigns include *Cleckley v. State,* 42 Md.App. 80, 399 A.2d 903 (1979) (search and seizure in New York by New York police); *Huber v. State,* 2 Md.App. 245, 234 A.2d 264 (1967) (search and seizure in Maryland by FBI agent pursuant to federal warrant).

In its brief the State refers to provisions of the Jencks Act which currently require production of certain statements of witnesses "in the possession of the United States" and which formerly required production of such statements only if made to "an agent of the Government." *See* 18 U.S.C. § 3500 (1982) (original version in Act of September 2, 1957, Pub.L. No. 85–269, 71 Stat. 595). The State sees relevance to the issue before us of decisions holding that, for purposes of the Jencks Act, statements in possession of state authorities are not "in the possession of the United States" or that statements to state authorities are not made to "agents of the Government." *See, e.g., United States v. Cagnina,* 697 F.2d 915 (11th Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 175, 78 L.Ed.2d 157 (1983); *United States v. Escobar,* 674 F.2d 469 (5th Cir.1982); *United States v. Higginbotham,* 539 F.2d 17 (9th Cir.1976); *United States v. Smith,* 433 F.2d 1266 (5th Cir.1970), *cert. denied,* 401 U.S. 977, 91 S.Ct. 1206, 28 L.Ed.2d 328 (1971); *United States v. Harris,* 368 F.Supp. 697 (E.D.Pa.1973), *aff'd,* 498 F.2d 1164 (3d Cir.), *cert. denied,* 419 U.S. 1069, 95 S.Ct. 655, 42 L.Ed.2d 665 (1974). The scope proviso in Md.R. 741 a 3 fleshes out "State agents" in Md.R. 741 b 2 and thereby undermines the analogy to the Jencks Act cases.

It should also be pointed out that present MD.R. 4–263 presents the scope proviso as § (g), which speaks of "[t]he obligations of the State's Attorney under this Rule," while former Md.R. 741 had presented the scope note under § a and had spoken of "[t]he State's Attorney's obligations under this section...." This change merely presents more clearly the intent of the predecessor, Md.R. 741 a, and does not represent an enlargement of the obligations of a State's Attorney in furnishing disclosure.

The State next argues that the trial court did not abuse its discretion in deciding to admit Jenkins' testimony and in permitting reference to it in the State's opening statement. The fallacy in this argument is that here the trial court ruled that there was no discovery violation so that it never reached the questions of whether a sanction should be

applied and, if so, what that sanction should be. In this respect the instant case is like *Colter v. State,* 297 Md. 423, 466 A.2d 1286 (1983), which involved that portion of the discovery rule requiring disclosure of the identity of alibi witnesses and of witnesses to rebut alibis. There we held that the fixed practice of the trial judge to exclude testimony from undisclosed alibi and rebuttal-to-alibi witnesses was an erroneous failure to exercise the discretion conferred under the rule. Because there was no attempt to exercise discretion here, our review may not be in terms of weighing whether discretion was abused.

The State also argues that any error was not prejudicial. We said in *Warrick v. State* that

> when a discovery violation comes to light in the course of trial, whether any sanction is to be imposed and, if so, what it is to be, is in the first instance committed to the discretion of the trial judge.... The exercise of that discretion includes evaluating whether a discovery violation has caused prejudice. [302 Md. at 173, 486 A.2d at 194 (citations omitted).]

If there is a determination that a discovery violation has caused prejudice, the nature and extent of that prejudice is interwoven with the trial court's discretionary determination of the appropriate relief.

In the case now before us, at the hearing on the motion for a new trial, defense counsel argued that, had disclosure been made, Bailey would have moved to suppress the statements on *Miranda* grounds (*Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)). The trial court commented that the statements testified to by Jenkins were not the product of a custodial interrogation. Such an analysis, however, looked only to Jenkins' testimony because Bailey exercised his right not to testify at trial. Whether or not the discovery violation resulted in prejudice seemingly principally turns on whether Bailey would have moved to suppress upon receipt of the statement and whether any such motion would have been successful.

It is convenient at this point in our opinion to consider the appropriate mandate inasmuch as the remaining points submitted by Bailey and discussed below do not demonstrate grounds for reversal. In *Warrick* we concluded that there had been a discovery violation, contrary to the trial court's determination, and we remanded pursuant to MD.R. 871. We shall similarly remand here. The trial court is to engage in a process potentially involving three steps.

Step One. The circuit judge will be in the position of recognizing that the State should have furnished Bailey with the report by Jenkins containing his recollection of Bailey's statement, and, to the extent, if any, that that report may not have set forth the substance of Bailey's statement, with additional matter necessary to disclose that substance. The judge shall consider Bailey's initial objection as of the time it was made and determine the appropriate remedy. If the trial judge at that point determines that the appropriate sanction for the discovery violation is to exclude the statement, he will grant a new trial. If the judge decides that exclusion is not an appropriate sanction, the judge will proceed to step two.

Step Two. If Bailey moves to suppress the statement on another basis, the court should hold an exclusionary hearing. If the decision on the exclusionary hearing is to exclude the statement, the judge will grant a new trial. If the decision is not to exclude the statement, the judge should proceed to step three.

■ Step Three. Here the circuit judge should consider whether Bailey was otherwise prejudiced by the State's discovery violation. The burden is on the State to prove beyond a reasonable doubt that there was no prejudice. *Warrick, supra,* 302 Md. at 174, 486 A.2d at 195. If the State is able to meet that burden, the judgment of conviction stands. If the State cannot show the absence of prejudice, the circuit court should grant a new trial.

(2)

■ As a result of his arrest in New Jersey Bailey was convicted in that state of receiving stolen goods. In the instant case he moved to dismiss on the ground that the New Jersey conviction barred prosecution on the Maryland charges. We shall assume, in this part (2), that the New Jersey and Maryland convictions are based upon the same acts or transaction.

Bailey's contention that the successive prosecutions violate Maryland's common law of double jeopardy is without merit. This Court has adopted, as a matter of common law, the dual sovereignty doctrine. Offenses against separate sovereigns are separate offenses for double jeopardy purposes even if the successive prosecutions are based upon the same acts. *See Evans v. State*, 301 Md. 45, 481 A.2d 1135 (1984), *cert. denied*, —— U.S. ——, 105 S.Ct. 1411, 84 L.Ed.2d 795 (1985); *State v. James*, 203 Md. 113, 100 A.2d 12 (1953); *Worthington v. State*, 58 Md. 403 (1882); *Frasher v. State*, 8 Md.App. 439, 260 A.2d 656, *cert. denied*, 400 U.S. 959, 91 S.Ct. 360, 27 L.Ed.2d 269 (1970).

■ Nor does collateral estoppel prevent the instant prosecution. Collateral estoppel " 'means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated *between the same parties* in any future lawsuit.' " *Carbaugh v. State*, 294 Md. 323, 329, 449 A.2d 1153, 1156 (1982) (quoting, with emphasis added, *Ashe v. Swenson*, 397 U.S. 436, 443, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469, 475 (1970)). Bailey argues that his New Jersey conviction as a receiver established that he was not the robber. In support he cites *Hinton v. State*, 36 Md.App. 52, 373 A.2d 39 (1977) (prior Maryland conviction for receiving bars subsequent Maryland prosecution for assault during the course of an armed robbery). Here collateral estoppel can have no application because different parties were adverse to Bailey in the New Jersey and Maryland prosecutions. *See State v. Brown*, 2 Ohio App.3d 321, 441 N.E.2d 1126 (1981) (ruling that prose-

cutions against the same defendant by two different states do not fall within collateral estoppel as applied in *Ashe v. Swenson, supra* ). Similarly, a number of cases hold that collateral estoppel does not operate in state and then federal, or federal and then state, prosecutions. *See generally* Annot., 6 A.L.R. 4th 802, at ¶ 4 (1981 & Supp.1984); Annot., 18 A.L.R. Fed. 393, at § 5 (1974 & Supp.1984); J. Cook, *Constitutional Rights of the Accused: Post-Trial Rights* § 85 n. 98.1 (Supp.1984).

■ Appellant's final variation on this basic argument is that it is so fundamentally unfair for successive prosecutions to be brought against him that due process is violated. The landmark case in support of the dual sovereignty concept, *Bartkus v. Illinois*, 359 U.S. 121, 79 S.Ct. 676, 3 L.Ed.2d 684, *reh'g denied*, 360 U.S. 907, 79 S.Ct. 1283, 3 L.Ed.2d 1258 (1959), rejected the argument that the dual sovereignty doctrine violated due process. The Court said:

> With this body of precedent as irrefutable evidence that state and federal courts have for years refused to bar a second trial even though there had been a prior trial by another government for a similar offense, it would be disregard of a long, unbroken, unquestioned course of impressive adjudication for the Court now to rule that due process compels such a bar. [*Id.* at 136, 79 S.Ct. at 685, 3 L.Ed.2d at 694.]

We recently relied heavily on *Bartkus* in reaffirming the dual sovereignty doctrine as part of Maryland common law. *See Evans v. State, supra*, 301 Md. 45, 481 A.2d 1135. The Court of Special Appeals rejected the fundamental fairness argument as to prosecutions by two sovereigns in *Bell v. State*, 22 Md.App. 496, 509–10, 323 A.2d 677, 683–84, *cert. denied*, 272 Md. 737 (1974), *cert. denied*, 421 U.S. 1003, 95 S.Ct. 2405, 44 L.Ed.2d 672 (1975). The intermediate appellate court relied heavily on the American precedents reviewed in *Bartkus* and we agree with that analysis. Successive prosecutions by different sovereigns have also been held not to violate due process in *State v. McKenna*, 188

Conn. 671, 453 A.2d 435 (1982) (state constitution); *State v. Castonguay*, 240 A.2d 747 (Me.1968); *cf. State v. Fletcher*, 26 Ohio St.2d 221, 271 N.E.2d 567 (1971), *cert. denied*, 404 U.S. 1024, 92 S.Ct. 699, 30 L.Ed.2d 675 (1972); *Lavon v. State*, 586 S.W.2d 112 (Tenn.1979); *State v. Straw*, 626 S.W.2d 286 (Tenn.Crim.App.1981). And *see* Annot., *supra*, 6 A.L.R. 4th 802, at ¶ 3. *But see, e.g., People v. Cooper*, 398 Mich. 450, 247 N.W.2d 866 (1976); *State v. Hogg*, 118 N.H. 262, 385 A.2d 844 (1978); *Commonwealth v. Mills*, 447 Pa. 163, 286 A.2d 638 (1971), generally taking the view that successive prosecutions are unfair as a matter of state law unless the second sovereign demonstrates a substantially different interest from the first which is unsatisfied by the prior conviction.

(3)

■ Appellant also challenges his pretrial identification from a photographic array by the victim of the robbery, Grace Ridgely. The challenge is limited to the composition of the array. At a pretrial hearing on Bailey's motion to suppress the identification, Ms. Ridgely testified that she had been shown six photographs and that she quickly eliminated four. She agreed with a suggestion by defense counsel that those four bore "no resemblance" to Bailey. The identification process took from between fifteen to thirty minutes.

We have examined the array displayed to Ms. Ridgely and independently determine that it was far from being "so unnecessarily suggestive and conducive to irreparable mistaken identification that [Bailey] was denied due process of law." *Stovall v. Denno*, 388 U.S. 293, 302, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199, 1206 (1967). All of the photographs are "mug shots" presenting frontal and lateral views of the subjects from the chest up. In the frontal views the identifying information on the card suspended by a chain around the subject's neck has been obliterated on the photographic prints by ink. Each subject is a young black male. All have closely cropped hair. None is bearded, although

several have slight moustaches. None have any unusual physical features. They are wearing casual shirts, either sport shirts, a tee shirt, or sweat shirts. "A lineup to be fair need not be composed of clones." *Webster v. State*, 299 Md. 581, 620, 474 A.2d 1305, 1325 (1984).

(4)

Bailey next submits that there was insufficient evidence to convict. His conviction is supported by identifications, both pretrial and at trial, by the victim and also by an identification at trial made by another witness who was at the scene of the robbery. Bailey's argument, which is based on how the witnesses articulated their identification and on claimed discrepancies between a description furnished by the victim and Bailey's actual appearance, goes to credibility.

(5)

The final point involves the denial of a motion for mistrial. In direct examination of a Baltimore City detective the prosecutor elicited that a preliminary hearing for Bailey had been scheduled in the District Court in early January 1984 and that Ms. Ridgely was there. The witness was then asked: "Was an opportunity afforded to the defendant at that time to hold an in-court line-up—in other words—?" Defense counsel objected. The court immediately sustained the objection before any answer was given. At a bench conference defense counsel moved for a mistrial which was denied.

Bailey sees the question as implanting in the minds of the jury the notion that Bailey had the right to call for a lineup at the District Court but did not do so, thereby indicating guilt.

The grant or denial of the motion for mistrial is in the discretion of the trial court, and we see no abuse of discretion here. *White v. State, supra*, 300 Md. at 737, 481 A.2d at 210. After the colloquy at the bench the trial judge limited further examination to one question which devel-

**664**

oped that there had been no confrontation of any kind between Ms. Ridgely and Bailey at the District Court.

CASE REMANDED, WITHOUT AFFIRMANCE OR REVERSAL, TO THE CIRCUIT COURT FOR BALTIMORE CITY FOR THE PURPOSE OF FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.

COSTS IN THE CIRCUIT COURT FOR BALTIMORE CITY AND IN THIS COURT TO ABIDE THE RESULT.

ELDRIDGE, Judge, dissenting:

I agree with Parts (1), (3), (4) and (5) of the majority opinion. With regard to Part (2), however, I continue to adhere to the views expressed in my dissenting opinion in *Evans v. State,* 301 Md. 45, 58–61, 481 A.2d 1135 (1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 1411, 84 L.Ed.2d 795 (1985).