120 N.J. Super. 208 (1972)
293 A.2d 678
STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
PHILIP P. SIDOTI, NICOLA AURIEMMA, RITA AURIEMMA, JOHN A. GUANCIONE, AND RAYMOND DE FILLIPPIS, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued July 25, 1972.
Decided August 3, 1972.
Before Judges LEONARD, HALPERN and LYNCH.
Mr. Michael H. Stieber, Assistant Prosecutor, argued the cause for appellant (Mr. Joseph P. Lordi, Essex County Prosecutor, attorney; Mr. R. Benjamin Cohen, Assistant Prosecutor, of counsel and on the brief).
Mr. Donald S. Goldman argued the cause for respondents Sidoti and Guancione (Messrs. Goldman, Goldman & Caprio, attorneys).
Messrs. Russell & McAlevy, attorneys for respondent De Fillippis, filed a statement in lieu of brief.
Messrs. Alongi, Bregg & DeVito, attorneys for respondents Auriemma, filed a statement in lieu of brief.
*210 The opinion of the court was delivered by HALPERN, J.A.D.
By leave granted, the State appeals from an order suppressing all the evidence seized resulting from two wiretap orders issued by the Essex County Assignment Judge. The relevant facts, the legislative history *211 of the New Jersey Wiretapping and Electronic Surveillance Control Act (N.J.S.A. 2A:156A-1 et seq.), and the reasons for its action are set forth in the court's opinion (116 N.J. Super. 70) and will not be repeated herein. Since the "Sidoti" wiretap, which followed the "Mitarotonda" wiretap in point of time, was held invalid because of the alleged infirmities in the Mitarotonda wiretap, we will deal primarily with the latter.
Preliminarily, we grant respondents' motion and strike from appellant's appendix the affidavit of James T. Palma dated February 11, 1972. This affidavit was not part of the record below and, therefore, is not properly before us. Wallach v. Williams, 52 N.J. 504, 505 (1968).
In addition to the reasons given by the court for suppressing the evidence seized, respondents contend N.J.S.A. 2A:156A-1 et seq., is unconstitutional on its face, and that the Mitarotonda and Sidoti wiretaps were illegal because the prosecutor failed to apply personally for the orders but authorized named detectives in his office to do so. These contentions are without merit. See State v. Dye, 60 N.J. 518 (1972).
The court suppressed the evidence seized because, as we understand the opinion, it found the Mitarotonda wiretap failed to show a "special need" for a wiretap on public telephones, as required by N.J.S.A. 2A:156A-11, of the breadth, duration and undifferentiated scope authorized by the court in violation of the Fourth Amendment of the Federal Constitution. Combining the elements of "special need" with the scope and breadth of the authorized tap is not warranted. Each must be considered separately in light of the existing circumstances.
We are in accord with the court's views that the New Jersey Legislature, in adopting N.J.S.A. 2A:156A-1 et seq., was sensitive to the threat to individual privacy inherent in any form of wiretapping, and in particular when a public telephone was involved. Section 11 of the statute expresses this concern by requiring the court to determine *212 that an undefined "special need" exists to intercept wire communications over public telephones. Such special need to be in addition to the standards fixed in Section 10.
We find that the proofs presented on the application for the Mitarotonda wiretap showed ample probable cause for belief that a "special need" existed to issue the order. It must be emphasized that the wiretap dealt with a bookmaking operation. We have long recognized that such operations are conducted by shrewd and ingenious individuals who constantly devise new techniques to avoid detection. State v. Kuznitz, 36 N.J. Super. 521, 530 (App. Div. 1955), certif. den. 20 N.J. 136 (1955). It is reasonably inferable that such individuals are fully acquainted with the provisions of N.J.S.A. 2A:156A-1 et seq., and in particular with the mandate that "special need" must be shown when public telephones are involved. Therefore, it does not strain the imagination to realize that bookmakers, whether or not part of organized gambling, would use public telephones to conduct their operations. In the process, they will utilize every conceivable ploy to avoid detection by the police whose mode of operation by surveillance, wiretapping and informers are well known to them. Detection by the police of bookmaking operations becomes more difficult with the passage of time. All this is evident in the proofs presented on the application for the Mitarotonda wiretap, a synopsis of which indicates that (a) information was received by the police from a reliable informant that Mitarotonda was utilizing two public telephones in booths located on public streets for bookmaking purposes; (b) the information was verified by surveilling the area over a four day period during which time the police observed Mitarotonda's actions which bore the well-known earmarks of a bookmaking operation; (c) the police observed the transfer of cash and slips of paper between Mitarotonda and unknown persons, and heard the placing of horse and lottery bets; (d) the impossibility of continuing surveillance in the area without being detected; and (e) the impracticality of executing a *213 search warrant at the telephone booths. Under such circumstances, we conclude that probable cause to believe that a "special need" existed for the issuance of the wiretap order had been shown because usual investigative methods would be unlikely to succeed. See Approved Draft, 1971, of the A.B.A. Project, etc., Standards Relating to Electronic Surveillance, § 5.10, and commentary thereon.
We turn to respondents' contention and the court's determination that the order permitting the Mitarotonda wiretap was too broad and unrestricted. The questioned portion of the order provided that the interception was to cover Mitarotonda and other unknown males and
* * * will begin and end as soon as practicable and be conducted in such a way as to minimize or eliminate the interception of communications other than the type described hereinabove; said interception shall terminate no later than thirty days from the beginning of interception * * *.
The thrust of the court's reasoning was that the order was defective because it "* * * constituted at best a loose hobble upon the discretion of the executing officers * * *" because it lacked "* * * concrete restrictions as to persons, times or duration * * *."
Our difficulty in deciding the issues presented stems from the fact that the court decided the motions to suppress without taking any proofs as to how the orders were executed by the police. We agree with the reasoning in State v. Christy, 112 N.J. Super. 48 (Law Div. 1970) that a wiretap order, similar to the one here in question, which did not specify the hours of interception and which limited the period to 30 days, was valid. While it is desirable for an order to be more specific as to which person's communications are to be intercepted, what hours of the day and the number of days the tap should last, bookmaking is a continuing operation, carried on with a myriad of persons, thus defying such specificity. Therefore, absent the ability to be more specific, wiretapping orders which place the burden on police to begin *214 and end the tap as soon as practicable, and to be done in such a way as to minimize or eliminate irrelevant communications, are valid. It then becomes the court's obligation to determine whether the actions of the police, as tested by Fourth Amendment standards, comport with due process and the court's direction in executing the order. United States v. King, 335 F. Supp. 523 (S.D. Calif. 1971). We must weigh the State's duty of protecting the public as against the potential danger of unreasonable wiretapping violative of an individual's right to privacy and free expression. On balance, the former must prevail if due process has been complied with. State v. Bisaccia, 58 N.J. 586, 590 (1971).
Therefore, we reverse the judgment below and remand the matter to the trial court to hold a plenary hearing to determine the means used and the circumstances under which the Mitarotonda wiretap was executed. If the police acted in good faith and in compliance with the order, so much of the intercepted communications that are relevant should be admissible in evidence, together with the evidence seized as a result thereof. State v. Dye, supra. So much thereof as is irrelevant and has been obtained through the "insolence" of the police in violation of the order and respondents' constitutional rights, together with the fruits thereof, should be suppressed. Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); State v. Dye, supra; State v. De Simone, 60 N.J. 319 (1972); State v. Bisaccia, supra.
In view of the foregoing, we make no determination of the issue raised by the State, based on Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1962), that even if the Mitarotonda tap were unlawful, the evidence secured by virtue of the Sidoti wiretap and search was admissible since it has become so attenuated as to dissipate the taint of the original unlawfulness.
Nor do we think it proper to decide whether respondents are aggrieved persons who have standing to challenge the evidence resulting from the Mitarotonda wiretap even assuming *215 it to be invalid. We do this because the necessary facts were not presented on this issue, nor was it raised or argued below or in this court. This issue should be determined on the remand. See Alderman v. United States, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1967); N.J.S.A. 2A:156A-17, 18 and 21; R. 3:5-7.
Jurisdiction is not retained.