No. 72–5535. Dye *v.* New Jersey. Sup. Ct. N. J. Certiorari denied. ▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮

Mr. Justice Douglas, dissenting.

Petitioner was convicted of bookmaking in violation of state law. The evidence from which the conviction resulted arose primarily from a wiretap of a telephone on the premises where petitioner was employed. Petitioner challenges the admissibility of the wiretap product on the grounds that the judicial authorization was not in conformity with the state statute authorizing wiretapping (N. J. Stat. Ann. § 2A:156A–1) and that the wiretap violated his Fourth Amendment rights.

Pursuant to judicial authorization, a wiretap was placed on the pay telephone located in the restaurant-bar-liquor store in which petitioner was employed. The affidavits supporting the request for authorization of the tap included the following information: That the police had been advised that the number of the telephone in question was listed many times on the toll receipt of another telephone which was located at a place where there was "good reason to believe," pursuant to a different investigation, that bookmaking operations were being conducted; that police stakeouts in the restaurant-bar-liquor store overheard both petitioner and an unidentified male make a call on the telephone in which betting information was passed; that petitioner was observed taking notes from the sports pages of a newspaper and having guarded conversations with customers; and that when a reliable informer was requested to call the telephone number and place a bet, petitioner refused to take the bet, leading the informer to believe that petitioner would not deal with strangers.

From the above facts, the law division judge concluded that sufficient exigent circumstances existed for

concluding that traditional investigative techniques would be unproductive, and issued a warrant which authorized the placing of a wiretap on the telephone between the hours of 10 a. m. and 3 p. m., Monday through Saturday for a 30-day period, with directions that the interception begin as soon as practicable. The order also directed that the wiretap be conducted in such a way as to minimize or eliminate the interception of communications other than the type described. Those communications subject to seizure were described as "communications of Bentley Dye [petitioner] relating to the offenses of Bookmaking and Conspiracy from telephone facility number 201–725–9743."

Pursuant to the order, the police placed a wiretap on the telephone which was operative for 22 days. Over 105 hours of conversations were tapped. A master tape of those conversations allegedly involving bookmaking and the conspiracy was made and it ran about 2½ hours. The recordings of nonrelated communications were sealed. (No reason is given as to why they were not destroyed.) On several days when petitioner was not at work the wiretap remained in effect, recording any calls made on the telephone.

In *Berger* v. *New York,* 388 U. S. 41, 63, this Court held that "[w]hile '[t]he requirements of the Fourth Amendment are not inflexible, or obtusely unyielding to the legitimate needs of law enforcement' . . . it is not asking too much that officers be required to comply with the basic command of the Fourth Amendment before the innermost secrets of one's home or office are invaded. Few threats to liberty exist which are greater than that posed by the use of eavesdropping devices."

In *Berger,* the language of the New York statute authorizing the wiretap was held to be unconstitutionally broad because authorization thereunder operated as the issuance of an illegal general warrant. The authoriza-

tion in *Berger* allowed a wiretap to be placed on the defendant's business office phone for a period of 60 days. The authorization was issued on the basis of affidavits advising the judge that the bases for the suspicions of a conspiracy to bribe the Chairman of the New York State Liquor Authority were recorded interviews between a complainant and the petitioner.

In *Berger* the Court placed special emphasis on the Fourth Amendment requirements that there be probable cause for the belief that a particular offense has been or is being committed and that the "property" (conversations) to be seized be described with particularity. In addition, the Court found the authorization constitutionally infirm on the grounds that an authorization for a period of two months constitutes a series of intrusions pursuant to a single showing of probable cause and that the authorization did not establish an intermediate termination date once the conversation sought was intercepted.

These same concerns dictate a reversal in the instant case: Only the merest investigation had been undertaken to establish that a particular offense was being committed, and part of that investigation, the unsuccessful attempt by an informer to place a bet, itself negated the suspicion. Although the authorization order limited the conversations to be seized, the execution of the order included seizure of all conversations on the telephone over the period of the wiretap. Such an invasion of privacy is even more horrendous since it involves a pay telephone in a public place where the majority of users and conversations, as indicated by the 102½ hours of innocent conversations out of the 105 hours of seized conversations, will have no relationship to the alleged criminal activity. Authorization for a 30-day wiretap would not appear to be any less of a continuing search than authorization for 60 days, especially in

light of the absence of any establishment of an intermediate termination date once the conversation sought was intercepted.

It is alleged that the New Jersey statute under which this wiretap was authorized is for all practical purposes identical to the federal authorization for wiretapping contained in Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U. S. C. § 2510 *et seq.* If the authorization of the wiretap in the instant case, which is the equivalent of a general warrant, is allowed by either of these statutes, then it is difficult to declare them constitutional.

I would grant certiorari.