**STATE of Minnesota, Respondent,**

v.

**Arlyn MONSRUD, Appellant.**

**STATE of Minnesota, Respondent,**

v.

**Alroy MONSRUD, Appellant.**

**Nos. C1–82–481, C6–82–850.**

Supreme Court of Minnesota.

Aug. 19, 1983.

Friedberg & Peterson, Minneapolis, for appellants.

Hubert H. Humphrey, III, St. Paul, Martin Berg, County Atty., Roseau, for respondent.

SCOTT, Justice.

Appellants Arlyn and Alroy Monsrud were convicted in separate trials in the Roseau County District Court of felony marijuana offenses occurring on August 14 and 19, 1981. These convictions resulted from an investigation by the Minnesota Bureau of Criminal Apprehension (BCA), in cooperation with local law enforcement officials, into marijuana trafficking in Roseau and surrounding counties in northwestern Minnesota. The investigation was directed primarily at Arlyn Monsrud, but his brother, Alroy Monsrud, was also arrested and convicted. The investigation included the use of a court-ordered wiretap of the telephone of Albert Monsrud, Jr., appellants' father, with whom Arlyn Monsrud lived. All issues in these appeals relate to this wiretap. We affirm.

Government officials had for some time been investigating marijuana dealing in Roseau County. On August 10, 1981, the Roseau County Attorney, having been sworn

before a notary public, signed a written application for a wiretap of the phone of Albert Monsrud, Jr. BCA agent Gregory Hopps, the officer in charge of the investigation, took the application and its supporting affidavits to a Roseau County District Court judge who signed an order authorizing a wiretap of the phone for a ten-day period. Agents intercepted a total of 370 calls from August 12 to August 19, 1981, the day appellants were arrested. Many of these calls were very brief, or were wrong numbers or misdials.

The parties have stipulated pursuant to Rule 29.02, subd. 10, Minn.R.Crim.P., as to the essential convictive evidence presented to the jury. It is sufficient to note that the August 14, 1981, offenses arose out of a sale of five pounds of marijuana to Agent Hopps by associates of appellants. The August 19, 1981, offenses arose out of an uncompleted sale of 20 pounds of marijuana to Agent Hopps. Transcripts of conversations intercepted pursuant to the wiretap were introduced at both trials.

Prior to trial appellants moved for suppression of the wiretap evidence on several grounds. The trial court denied the motions, appellants were convicted, and this appeal was taken challenging the introduction at trial of the wiretap evidence. On appeal appellants contend that the wiretap evidence should have been suppressed because (1) the county attorney did not personally appear before the judge issuing the wiretap order, in violation of 18 U.S.C. 2516(2), Minn.Stat. § 626A.05, subd. 1 (1982), and Minn.Stat. § 626A.06, subd. 1 (1982); (2) the wiretap application did not establish that other investigative techniques were inadequate to expose the crimes, contrary to Minn.Stat. § 626A.06, subds. 1(c) and 3(c) (1982); (3) the wiretap order did not specify the offenses for which the wiretap was authorized under Minn.Stat. § 626A.05, subd. 2 (1980); (4) the application did not identify Alroy Monsrud as a person whose conversations were to be intercepted, in violation of 18 U.S.C. 2518(1)(b)(iv) and Minn.Stat. § 626.06, subd. 1(b)(iv) (1982); and (5) the agents executing the wiretap warrant failed to comply with the minimization requirement of 18 U.S.C. 2518(5) and Minn.Stat. § 626.06, subd. 4(h) (1982).

In 1968 Congress enacted Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 82 Stat. 211 (1968), codified at 18 U.S.C. 2510–2520 (1976 ed.), which deals with wiretapping and other forms of electronic surveillance. By this Act Congress intended to provide law enforcement officers with some of the tools thought necessary to combat crime without unnecessarily infringing on the right of individual privacy. *Scott v. United States,* 436 U.S. 128, 130, 98 S.Ct. 1717, 1719, 56 L.Ed.2d 168 (1978). All state wiretaps are foreclosed under the federal statute unless authorized by a similar state statute which may be more restrictive, but not less so, than the federal act. *State v. Frink,* 296 Minn. 57, 65, 206 N.W.2d 664, 669 (1973).

The Minnesota Privacy of Communication Act, Minn.Stat. Ch. 626A (1982), was enacted in 1969 in response to the federal wiretap statute. Ambiguities in our statute will be strictly construed against the state. *Wolk v. DeCowski,* 310 N.W.2d 131, 132 (Minn.1981); *State v. Frink,* 296 Minn. 57, 74, 206 N.W.2d 664, 674 (1973).

1. Appellants contend the wiretap order was improperly issued because the Roseau County Attorney did not appear in person before the district court judge who issued the order. This contention is based upon a construction of Minn.Stat. § 626A.05, subd. 1, § 626A.06, subd. 1, and 18 U.S.C. 2516(2). We reject appellants' contention and hold that neither the federal nor state wiretap statutes require the county attorney to appear in person before the district court judge issuing a wiretap warrant.

18 U.S.C. 2516(2) provides in part:

The principal prosecuting attorney of any State, or *the principal prosecuting attorney of any political subdivision* thereof, if such attorney is authorized by a statute of that State to make application to a State court judge of competent

jurisdiction for an order authorizing or approving the interception of wire or oral communications, *may apply to such judge for,* and such judge may grant in conformity with section 2518 of this chapter and with the applicable State statute an order authorizing, or approving the interception of wire or oral communications by investigative or law enforcement officers having responsibility for the investigation of the offense as to which the application is made, when such interception may provide or has provided evidence of the commission of the offense of murder, * * *.

(Emphasis supplied.)

Minn.Stat. § 626A.05, subd. 1, provides:

*Application for warrant.* The attorney general, or not more than one assistant or special assistant attorney general specifically designated by the attorney general or *a county attorney* of any county or not more than one assistant county attorney specifically designated by the county attorney *may make application as provided in section 626A.06 to a judge* of the district court or of the supreme court for a warrant authorizing or approving the interception of wire or oral communications by investigative or law enforcement officers having responsibility for the investigation of the offense as to which the application is made. No court commissioner shall issue a warrant under sections 626A.01 to 626A.23.

(Emphasis supplied.)

Minn.Stat. § 626A.06, subd. 1, provides, in part:

The applications. *Each application* for a warrant authorizing or approving the interception of a wire or oral communication *shall be made in writing upon oath or affirmation to a judge* of the district court or of the supreme court and shall state the applicant's authority to make such application. Each application shall include the following information: * * *.

(Emphasis supplied.)

This court has never decided whether a county attorney must personally appear before the issuing judge. At least one federal court has held that the federal statute, 18 U.S.C. 2516(2), does not require the chief prosecuting officer of a political subdivision to appear personally before the issuing judge. *Alexander v. Harris,* 595 F.2d 87, 89 (2d Cir.1979); *United States v. Manfredi,* 488 F.2d 588, 601 (2d Cir.1973), *cert. denied,* 417 U.S. 936, 94 S.Ct. 2651, 41 L.Ed.2d 240 (1974); *United States v. Tortorello,* 480 F.2d 764, 776–77 (2d Cir.), *cert. denied* 414 U.S. 866, 94 S.Ct. 63, 38 L.Ed.2d 86 (1973). A personal appearance has been found unnecessary under state statutes as well. *See e.g., United States v. Tortorello,* 480 F.2d 764, 776–78 (2d Cir.), *cert. denied,* 414 U.S. 866, 94 S.Ct. 63, 38 L.Ed.2d 86 (1973) (New York statute); *State v. Sidoti,* 120 N.J.Super. 208, 211, 293 A.2d 678, 680 (App.Div. 1972) (New Jersey statute).

Minn.Stat. §§ 626A.05, subd. 1, · and 626A.06, subd. 1, do not expressly require the county attorney to personally appear before the issuing judge. The law enforcement officer actually conducting a particular investigation, as in this case, is generally in a better position to answer questions concerning probable cause, and that is the only practical justification for requiring a personal appearance. Requiring a formalistic appearance by the county attorney before the issuing judge in every case would not further the individual privacy interests the Act is designed to protect.

2. Appellants contend the wiretap evidence should have been suppressed because the application does not establish that normal investigative techniques were insufficient to obtain evidence of drug trafficking. The argument is based on Minn.Stat. § 626A.06, subd. 1(c), which requires each wiretap application to contain "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." Minn.Stat. § 626A.06, subd. 3(c), requires the issuing judge to make a finding that other investigative procedures are inadequate for one of the reasons stated in § 626A.06, subd. 1(c). The trial court correctly found that the

application sufficiently established the inadequacy of normal investigative techniques.

Although subds. 1(c) and 3(c) of § 626A.06 have never been construed by this court, the corresponding provisions of the federal statute, 18 U.S.C. 2518(1)(c) and (3)(c), have received extensive scrutiny. These sections were enacted to insure that wiretaps were not resorted to in those situations where traditional investigative techniques would suffice to expose the crime. *United States v. Kahn,* 415 U.S. 143, 153 n. 12, 94 S.Ct. 977, 983 n. 12, 39 L.Ed.2d 225 (1974). They are designed to insure that wiretapping is not routinely employed as the initial step in a criminal investigation, *United States v. Giordano,* 416 U.S. 505, 515, 94 S.Ct. 1820, 1826, 40 L.Ed.2d 341 (1974), and to guarantee that wiretapping or bugging occurs only when there is a genuine need for it and only to the extent that it is needed. *Dalia v. United States,* 441 U.S. 238, 250, 99 S.Ct. 1682, 1689, 60 L.Ed.2d 177 (1979). The government's burden of establishing compliance with these sections is light. *United States v. Anderson,* 542 F.2d 428, 431 (7th Cir.1976). It is not necessary to exhaust specific or all possible techniques before resorting to wiretaps. *United States v. Daly,* 535 F.2d 434, 438 (8th Cir.1976). The statutes are worded in the disjunctive and it is sufficient if the application shows that normal investigative techniques either (1) have been tried and failed; (2) reasonably appear unlikely to succeed if tried; or (3) would be too dangerous.

The applications and supporting affidavits established the inadequacy of traditional investigative techniques. Arlyn Monsrud had been under investigation for selling marijuana for some time; he knew he was under investigation and had angrily confronted local law enforcement officers about it. Several informants had refused to aid in the investigation because they feared they would be hurt by Arlyn. Physical surveillance of his residence was not

practicable because the land surrounding his home consists of open flat fields.[1] Furthermore, most of the neighboring farmers are his relatives. One neighbor who was not a relative refused to permit local officers to conduct surveillance from his land because of fear of Arlyn Monsrud.

An undercover agent had been unable to reach Arlyn because persons with whom the agent dealt had been unwilling to introduce him. In July 1981, the intermediaries told the agent they suspected he was a "narc" and did not trust him. One of these persons had been convicted of assaulting an officer and expressed a willingness to do so again. They had also expressed concern to Hopps about suspicious vehicles in the area, which were in fact BCA surveillance vehicles. The purchases the undercover agent did make were arranged so as to avoid any direct contact by the agent with Arlyn.

The applications showed that visual surveillance, undercover operations, and the use of confidential informants had been insufficient to expose the crime. The requirements of Minn.Stat. § 626A.06, subds. 1(c) and 3(c), were met.

3. Appellants contend that the intercepted conversations and evidence derived therefrom should have been suppressed because neither the application nor the warrant specified the particular offenses for which interception was authorized and the order or warrant did not limit interception to felony offenses. Minn.Stat. § 626A.06, subd. 4(c), requires each wiretap warrant to contain "a particular description of the type of communication sought to be intercepted, and a statement of the particular offense to which it relates." Minn.Stat. § 626A.06, subd. 3(a), requires the issuing judge to make a finding that "there is probable cause for belief that an individual is committing, has committed, or is about to commit a particular offense enumerated in section 626A.05, subd. 2." Minn.Stat.

---

1. We have not overlooked the "open field" doctrine discussed in *State v. White,* 332 N.W.2d 910 (Minn.1983).

§ 626A.05, subd. 2 (1980),[2] lists the particular offenses for which a wiretap may be obtained:

Offenses for which interception of wire or oral communication may be authorized. A warrant authorizing interception of wire or oral communications by investigative or law enforcement officers may only be issued when such interception may provide evidence of the commission of any criminal felony offense involving murder, manslaughter, aggravated assault, aggravated robbery, kidnapping, aggravated rape, prostitution, bribery, perjury, escape from custody, theft, receiving stolen property, embezzlement, burglary, forgery, aggravated forgery, gambling, and offenses relating to controlled substances, or an attempt or conspiracy to commit any such offense or said offenses, as punishable under sections 609.185, 609.19, 609.195, 609.20, 609.-225, 609.245, 609.25, 609.291, 609.321 to 609.324, 609.42, 609.48, 609.485, subdivision 4, clause (1), 609.52, 609.53, 609.54, 609.58, 609.625, 609.63, 609.76, 609.825, and chapter 152.

The pertinent facts from the application, affidavits and surveillance order are as follows: The application and affidavits described in great detail the information learned by Agent Hopps in his undercover investigation and specifically described several large marijuana purchases made by Hopps from Arlyn Monsrud's associates. It stated that the subject phone was used by Arlyn Monsrud and others to commit felony offenses relating to the possession, acquisition and transfer of controlled substances in violation of Minn.Stat. Ch. 152 and/or attempt or conspiracy to commit such offenses in violation of Minn.Stat. §§ 609.17 and 609.175, and that the officers seeking the warrant had responsibility for the investigation of such felony offenses. The types of communications to be intercepted were described as conversations between Arlyn Monsrud and others concerning the making of arrangements for the transfer of

drugs, particularly marijuana, including conversations concerning negotiations for the price of drugs, quantities involved, place and means of transfer, and security for the transfer.

The search warrant findings and order incorporated the facts presented in the application. It described the conversations to be intercepted as those of Arlyn Monsrud and others in regard to the possession, acquisition and distribution of controlled substances. It also stated that the conversations would concern plans for trafficking in controlled substances and avoiding detection and apprehension by law enforcement officials. The issuing court also found that the application contained a detailed statement as to felonious offenses that had been committed or might be committed relating to the possession, acquisition and distribution of controlled substances, as that term is used in Minn.Stat. Ch. 152.

We hold that, taken as a whole, the application and order described the suspected offenses and the conversations to be intercepted with the degree of particularity required by the Fourth Amendment and Minn.Stat. § 626A.06, subds. 3(a) and 4(c).

■ Courts construing corresponding provisions of the federal statute, 18 U.S.C. 2518(1)(b)(iii) and (4)(c), take a pragmatic and commonsense approach to the particularity requirement. It is, of course, impossible for the officers to know in advance the actual content of conversations that will be intercepted and the description therefore must be sufficiently flexible to permit the interception of all relevant conversations. In determining whether the order and application are sufficiently particular, the papers as a whole must be considered, including those portions which recite facts to establish probable cause. *United States v. Tortorello*, 480 F.2d 764, 780 (2d Cir.), *cert. denied*, 414 U.S. 866, 94 S.Ct. 63, 38 L.Ed.2d 86 (1973).

---

**2.** Section 626A.05, subd. 2, was amended in 1982, apparently in response to this court's ruling in *Wolk v. DeCowski*, 310 N.W.2d 131

(Minn.1981). The version quoted above was in effect when the wiretap order in this case was issued.

Appellants' specific objections are that the search warrant order itself does not specifically limit the interception to felony offenses and does not cite the particular sections within Minn.Stat. Ch. 152 for which interception was authorized. Although the order itself did not use the word "felony," it is clear from the court's findings accompanying the order, and the application that had been incorporated therein, that the interception the court was approving was for the felony offenses involving marijuana that were the subject of the application. Similarly, the fact that the order did not cite the specific sections within Chapter 152 for which interception was authorized is not fatal. Minn.Stat. § 626A.05, subd. 2, which lists the offenses for which an interception may be authorized, does not include such specificity. Suppression is inappropriate where, as here, a practical and commonsense reading of the papers provides an adequate description of the offenses for which interception is authorized.

4. Appellant Alroy Monsrud contends that the wiretap evidence should have been suppressed because the application did not name him as a person whose conversations were to be intercepted. Minn.Stat. § 626A.06, subd. 1(b)(iv), requires every wiretap application to contain "the identity of the person, if known, committing the offense and whose communications are to be intercepted." The trial court correctly rejected appellant's argument.

In construing the corresponding provision of the federal statute, 18 U.S.C. 2518(1)(b)(iv), the United States Supreme Court held that a wiretap application must name an individual "if the Government has probable cause to believe that the individual is engaged in the criminal activity under investigation and expects to intercept the individual's conversations over the target telephone." *United States v. Donovan*, 429 U.S. 413, 428, 97 S.Ct. 658, 668, 50 L.Ed.2d 652 (1977). An unintentional failure to name an individual does not require suppression, at least where the application satisfies the statutory requirements in all other respects and there is no suggestion that the failure to identify the individual was for the purpose of keeping relevant information from the issuing judge. *Id.* at 433–36, 97 S.Ct. at 671–72.

No suppression is required because the agents in this case did not have probable cause to believe Alroy was involved when the application was sought and they did not expect to intercept his conversations. Furthermore, there was nothing to suggest that the failure to name Alroy was for the purpose of keeping relevant information from the issuing judge. Although both Arlyn and Alroy had been under investigation for five years before the wiretap, Agent Hopps testified that he did not know Alroy was still in the area at the time the application was made. He believed Alroy was residing in Fargo, North Dakota, at the time. He also testified that had he been aware of Alroy's involvement at the time the application was made he would have sought a tap on his phone as well.

5. Appellants contend that suppression is required because the agents executing the wiretap warrant failed to minimize the interception of communications not related to the investigation as required by Minn.Stat. § 626A.06, subd. 4(h). That statute requires each wiretap warrant to contain "a statement that the warrant shall be executed as soon as practicable, shall be conducted in such a way as to minimize the interception of communications not otherwise subject to interception under section 626A.01 to 626A.23 and must terminate upon attainment of the authorized objective, or in any event in ten days." The warrant in this case contained the required statement.

Prior to operation of the wiretap the officers met with a special assistant attorney general who discussed and explained the minimization procedure. The procedure employed in this case was that when officers determined a call was not about drugs, the tape recorder would be turned off. The officers would, however, continue to listen to the conversations and turn the recorder on again only if the call did turn to drugs.

Of the 370 "calls" intercepted during the wiretap, over 160 were wrong numbers, no answers, busy signals, false alarms, etc. The overwhelming majority of the remaining calls were three minutes or less in length. On the basis of the stipulation in the briefs, it appears that three conversations were produced at Alroy Monsrud's trial and seven at Arlyn Monsrud's trial. Those conversations introduced at trial were related to the crimes for which appellants were convicted and for which the wiretap was authorized.

We hold that the procedure employed by the agents executing the warrant in this case did not satisfy the minimization requirement of Minn.Stat. § 626A.06, subd. 4(h). We also hold, however, that noncompliance with the minimization requirement did not require the suppression of the conversations that were introduced at appellants' trials.

The procedure employed by the agents—listening to but not recording calls determined to be non-pertinent—is not an acceptable minimization procedure. The minimization requirement of § 626A.06, subd. 4(h), must be read as requiring the intercept order to be executed in such a way as to minimize the monitoring or hearing of communications not subject to interception under the Act. Mere non-recording of overheard conversations does not constitute minimization. Every conversation overheard by the government is intercepted, regardless of whether or not it is recorded.

Other courts have held that listening to, but not recording, conversations overheard during a wiretap is not an acceptable minimization procedure. *See, e.g., United States v. Bynum,* 360 F.Supp. 400, 408–09 (S.D.N.Y.1973); *Morrow v. State,* 249 S.E.2d 110, 119, 147 Ga.App. 395, 405–06 (1978).[3] This interpretation of the minimization requirement is buttressed by other provisions of the Minnesota Privacy of Communications Act. Minn.Stat. § 626A.08, subd. 1 (1982), expressly requires

that every part of every communication, conversation or discussion overheard pursuant to the Act be completely recorded. The legislature could not have intended that agents satisfy the minimization requirement of § 626A.06, subd. 4(h), through the violation of other provisions of the statute.

The minimization requirement may indeed pose practical problems for the agents charged with executing the wiretap order. Agents cannot be expected to possess the prescience necessary to determine in advance which calls will be pertinent or when a seemingly innocent conversation will turn to criminal matters. The statute therefore does not require perfection from the agents or prohibit the interception of non-pertinent conversations—it only requires that the wiretap be conducted in such a way as to minimize the interception of conversations not otherwise subject to interception.

Law enforcement officers have developed numerous minimization procedures which the courts have found acceptable, such as spot listening to calls determined to be non-pertinent, listening only to calls by or to certain individuals or phone numbers, and determining patterns of conversational activity which provide the monitors with reasonable expectations as to the parties and character of conversations. Judicial supervision during surveillance has been called a vital part of the minimization requirement. *See,* James E. Carr, *The Law of Electronic Surveillance,* § 5.07[3] (1977).

The conclusion that the minimization effort employed in this case did not satisfy the statute's mandate does not end the inquiry. The remaining issue is whether the failure to minimize requires the suppression of all conversations intercepted, or only those improperly intercepted.

■ Even though the minimization efforts employed here did not satisfy the statute's mandate, only those conversations which were not properly intercepted would be subject to suppression. The great

3. One court has held that listening to but not recording conversations overheard is an acceptable minimization procedure. *Spease v. State,* 275 Md. 88, 338 A.2d 284 (1975). We decline to follow it.

weight of authority and, in our judgment, the sounder reasoning holds that the failure to minimize requires only the suppression of those conversations which should not have been seized and not the suppression of those conversations which were appropriately seized. *United States v. Cox*, 462 F.2d 1293, 1301–02 (8th Cir.1972), *cert. denied*, 417 U.S. 918, 94 S.Ct. 2623, 41 L.Ed.2d 223 (1974); *United States v. Sisca*, 361 F.Supp. 735, 746–47 (S.D.N.Y.1973), *aff'd*, 503 F.2d 1337 (2d Cir.), *cert. denied*, 419 U.S. 1008, 95 S.Ct. 328, 42 L.Ed.2d 283 (1974); *United States v. Mainello*, 345 F.Supp. 863, 874–77 (E.D.N.Y.1972); *United States v. LaGorga*, 336 F.Supp. 190, 197 (W.D.Pa.1971); *Rodriguez v. State*, 297 So.2d 15, 21 (Fla.1974); *Bell v. State*, 22 Md.App. 496, 505, 323 A.2d 677, 681–82 (1974), *cert. denied*, 421 U.S. 1003, 95 S.Ct. 2405, 44 L.Ed.2d 671 (1975); *State v. Sidoti*, 120 N.S.Super. 208, 214, 293 A.2d 678, 681–82 (App.Div.1972); *State v. Dye*, 60 N.J. 518, 536–40, 291 A.2d 825, 834–36, *cert. denied*, 409 U.S. 1090, 93 S.Ct. 699, 34 L.Ed.2d 675 (1972).

This approach is consistent with traditional Fourth Amendment doctrine, which holds that the seizure of some items beyond those specified in a search warrant does not result in the suppression of those items which were validly seized. Rather, only those items seized which are beyond the permissible scope of the warrant are subject to suppression. *See, United States v. Sisca*, 361 F.Supp. 735, 746–47 (S.D.N.Y. 1973), *aff'd*, 503 F.2d 1337 (2d Cir.), *cert. denied*, 419 U.S. 1008, 95 S.Ct. 328, 42

L.Ed.2d 283 (1974), and cases cited therein. In this case the agents were acting in good faith pursuant to a lawfully issued order based upon probable cause. If, in their good faith efforts in executing the warrant they seized conversations beyond those authorized by the warrant, the remedy would be to limit the suppression to those conversations seized in violation of the warrant and statute.

It has been suggested by some that this approach is unsatisfactory because it provides law enforcement officers with no incentive to minimize the interception of nonpertinent conversations since they will in any case still get the use of the highly incriminating calls. Carr, *The Law of Electronic Surveillance*, § 5.07[4][d], pp. 266–67 (1977). The statutory scheme in Minnesota, however, by imposing civil liability upon persons who intercept communications in violation of the Act, provides officers with sufficient incentive to comply with the minimization requirement.[4]

Affirmed.

SIMONETT, Justice (concurring specially).

I agree with the court's opinion but wish to comment on the majority's statement that "[i]f, in their good faith efforts in executing the warrant they [the law enforcement agents] seized conversations beyond those authorized by the warrant, the remedy would be to limit the suppression to those conversations seized in violation of the warrant and statute."

---

4. Minn.Stat. § 626A.13 (1982), provides:

   Any person whose wire or oral communication is intercepted, disclosed, or used in violation of sections 626A.01 to 626A.23 shall (1) have a civil cause of action against any person who intercepts, discloses, or uses, or procures any other person to intercept, disclose or use such communications, and (2) be entitled to the following remedies:

   (a) to an injunction by any court of competent jurisdiction prohibiting further interception or use or divulgence by the person involved;

   (b) to treble damages against the person or persons committing such interception, divulgence, or use, but in no event shall such recovery be less than $1,000;

   (c) to any punitive damages that may be awarded by the court or jury; and

   (d) a reasonable attorney's fee and other litigation costs reasonably incurred.

   A good faith reliance on a court order shall constitute a complete defense to any civil or criminal action brought under sections 626A.01 to 626A.23. Good faith reliance by a telephone or telegraph company on a warrant issued pursuant to sections 626A.01 to 626A.23, or on provisions of sections 626A.01 to 626A.23 requiring action by such company, shall constitute a complete defense to any civil action brought under sections 626A.01 to 626A.23.

In other words, only conversations that are properly seized may be admitted. This is not the same thing, it seems to me, as saying that only nonpertinent conversations will be suppressed. If an unlawful intercept occurs because of a failure to minimize and a pertinent conversation is obtained thereby, that conversation would be suppressible. *See United States v. Suquet,* 547 F.Supp. 1034, 1044 (1982); *United States v. Dorfman,* 542 F.Supp. 345, 395 (N.D.Ill. 1982).[1]

Some cases suggest, further, that a distinction should be made between minimization efforts which are simply inadequate or fail to comply with the warrant requirements and those situations where there is a "flagrant disregard" of the minimization limitation. *See, e.g., Suquet,* 547 F.Supp. at 1039–40, and cases there cited. When minimization is flagrantly disregarded so that the particularized search authorized by the warrant becomes, in practice, a general search prohibited by the fourth amendment, total suppression of the intercepts may be appropriate. *People v. Brenes,* 42 N.Y.2d 41, 396 N.Y.S.2d 629, 364 N.E.2d 1322, 1328 (1977) (total suppression upheld where agents acted "as if in defiance" of the minimization requirements). Though difficult to apply, it seems to me this distinction may have merit and might be applicable in a case of egregious monitoring abuse, such as where no effort at all is made at minimization.

Here, although the effort fell short, the agents did attempt to minimize their interceptions by distinguishing between pertinent and nonpertinent conversations and by turning off the recording device for those which were nonpertinent. The effort fell short because the agents should also have stopped listening when they were not recording. This violation, however, was not in flagrant disregard or defiance of the law;

indeed, it was apparently based on an alternative interpretation of the statute, an interpretation we now reject. I would, therefore, affirm the trial court's ruling.

WAHL, Justice (dissenting).

Because I conclude that the wiretap warrant was obtained and executed in violation of certain provisions of 18 U.S.C. 2510–2520 (Title III) and the Minnesota Privacy of Communications Act, Minn.Stat. ch. 626A (1982), hence in violation of the right of the people to be secure in their persons and houses from unreasonable searches and seizures, I must respectfully dissent.

Wiretapping, that ultimate invasion of personal privacy, was brought squarely within the purview of the Fourth and Fourteenth Amendments by the United States Supreme Court in *Berger v. New York,* 388 U.S. 41, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967). Recognizing "few threats to liberty * * * greater than that posed by the use of eavesdropping devices," the *Berger* court concluded that "[w]hile '[t]he requirements of the Fourth Amendment are not inflexible, or obtusely unyielding to the legitimate needs of law enforcement,' it is not asking too much that officers be required to comply with the basic command of the Fourth Amendment before the innermost secrets of one's home or office are invaded." *Id.* at 63, 87 S.Ct. at 1885 (citation omitted).

The Court identified a number of prerequisites a statute authorizing wiretapping must contain in order to pass constitutional muster:

> (1) There must be probable cause to believe that a particular offense has been committed; (2) the conversations to be intercepted must be particularly described; (3) the surveillance must be for a specific and limited period of time, to minimize the intrusion into privacy; (4) continuing probable cause must be shown

---

1. If the government continues to intercept, for example, a person not named in the authorizing order after his or her identity has been established and a pattern of innocent conversation takes place, it would be of no moment that eventually that individual was heard discussing incriminating matter; the conversa-

tion would still be subject to suppression because it would have been "unlawful" for the monitors to be overhearing the conversation in the first instance.
*United States v. Dorfman,* 542 F.Supp. 345, 395 (N.D.Ill.1982).

if the warrant is to be renewed; (5) eavesdropping must terminate once the evidence sought has been seized; (6) there must be notice unless a factual showing of exigency is made; and (7) there must be a return on the warrant so that the court may supervise and restrict the use of the seized conversations.

C. Fishman, *Wiretapping and Eavesdropping*, 7, n. 17 (1978) (summarizing *Berger*, 388 U.S. at 54–60, 87 S.Ct. at 1881–84).

There is no constitutional challenge in the cases before us to the federal and state wiretapping statutes, for they were drafted to meet constitutional requirements. Such statutes provide us no protection from unlawful searches and seizures, however, unless we adhere to them in letter and in spirit. To that end this court has strictly construed Minnesota's wiretapping statute. In *State v. Frink*, 296 Minn. 57, 206 N.W.2d 664 (1973), we refused to permit an assistant county attorney to apply for a wiretap warrant where the statute did not expressly so authorize. We stated there that "in an area as sensitive as the invasion of privacy of oral communications, there is no room to expand our statute beyond what Congress and the legislature expressly authorized." *Id.* at 74, 206 N.W.2d at 674. More recently, in *Wolk v. DeCowski*, 310 N.W.2d 131 (Minn.1982), we took a strict approach in deciding for which offenses a wiretap warrant could issue and resolved the statutory ambiguity against the state. We noted that "normal standards of statutory interpretation and construction cannot be followed in resolving ambiguities in a statute dealing with interception of private communications to citizens." *Id.* at 133.

Strict construction of the statute requires that the attorney authorized to apply for the wiretap also be present before the issuing court. Minn.Stat. § 626A.05, subd. 1, states that the county attorney may apply for a warrant "as provided in section 626A.06, to a judge." Section 626A.06, subd. 1, provides, as the majority notes, that the application shall be made in writing, but section 626A.06, subd. 2, provides that the court, "before issuing any warrant

thereon, may examine on oath the person seeking the warrant." The statute requires the applicant to be cognizant of all the facts which are relied on in the application. Any facts elicited from police officers before the court but not contained in the sworn application would permit issuance of a warrant based on facts unknown to the applicant if he is not required to appear personally. I would hold, as we did in *Frink* and *Wolk*, that any ambiguity be resolved against the state. I would require a personal appearance by the applicant. Since in this case the applicant did not appear, the warrant was invalidly issued.

Second, and even more importantly, the officers failed to minimize their interceptions as required by section 626A.06, subd. 4(h). No attempt was made to intercept only those conversations which were drug-related. From August 12 to August 19, 1981, government agents intercepted a total of 370 calls. It is clear from the transcript of the recorded conversations that the vast majority of those conversations, including many of the lengthy ones, had nothing to do with drug trafficking activity but concerned daily activities, social endeavors or running a farm. A great many of the intercepted calls were made by or to members of the Monsrud household whose conversations showed no knowledge of drug trafficking and who were not under investigation. Even those conversations which the agents did not record, though recording is required by the Act, were monitored auditorily. Furthermore, the monitoring agents did not make the court that issued the warrant aware of the types of conversations that were being intercepted, so there was no judicial supervision over the interceptions.

The majority opinion recognizes that the procedure followed in this case violated the minimization requirement but would suppress only those conversations which were improperly intercepted. Such a remedy is useless. Because the only conversations the prosecution is interested in are those which are pertinent, suppression of nonpertinent conversations will have no effect on the

prosecution of cases. It will provide no incentive to law enforcement officers to put forth any but the most nominal effort to minimize their interceptions.

The possibility that some relevant information may be missed if the interception is minimized in no way outweighs the privacy interests of the parties using a wiretapped phone line. As Justice Brandeis reminds us, in his stirring dissent in *Olmstead v. United States*, 277 U.S. 438, 478, 48 S.Ct. 564, 572, 72 L.Ed. 944 (1928), "[t]he makers of our Constitution * * * conferred, as against the Government, the right to be let alone—the most comprehensive of rights and the right most valued by civilized men."

Whether or not the nonpertinent conversations are used at trial is irrelevant. The fact remains that the privacy of unwitting and innocent individuals has been illegally infringed. The only effective way to prevent such infringement is to suppress all evidence obtained by the wiretap. A civil remedy, easily defeated by the officer's "good faith," does not provide a sufficient deterrent where the officer is assured of use of any pertinent evidence he uncovers in an unreasonably broad interception.

I would reverse the convictions, remand the case of Arlyn Monsrud for a new trial and remand the case of Alroy Monsrud for a determination of the state's claim that the introduction of the wiretap evidence was harmless error.