287 N.J. Super. 416 (1996)
671 A.2d 186
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
RAYMOND TANGO, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued December 12, 1995.
Decided February 20, 1996.
*417 Before Judges PRESSLER, KEEFE and A.A. RODRIGUEZ.
Harvey Weissbard argued the cause for appellant (Weissbard & Wiewiorka, attorneys; Mr. Weissbard, on the brief).
Gerard C. Sims, Jr., Deputy Attorney General, argued the cause for respondent (Deborah T. Poritz, Attorney General of New Jersey, attorney; Mr. Sims, of counsel and on the brief).
The opinion of the court was delivered by KEEFE, J.A.D.
After unsuccessfully moving to suppress evidence obtained through an authorized wire tap, defendant pled guilty, pursuant to a plea agreement, to second degree conspiracy to distribute more than five pounds of marijuana. As a part of the negotiated plea, the State agreed to dismiss the other two counts of the indictment and recommend that any custodial sentence would not exceed nine years with a four year parole disqualifier, consecutive to the murder sentence that defendant was then serving in state prison. Defendant preserved the right to appeal the trial court's rulings on all pre-trial motions. Subsequently, defendant was sentenced in accord with the agreement.
*418 On appeal, defendant contends that the trial judge erred in denying his motion to suppress the wiretap evidence against him because: (1) taps of cellular phones could not, at the relevant time, be authorized under the New Jersey Wiretapping and Electronic Surveillance Control Act, N.J.S.A. 2A:156A-1 et seq., and (2) the wiretap authorization order did not state the location of the cellular phone to be tapped, as required by the aforesaid statute. Defendant also maintains that his sentence was excessive given the sentences of similarly situated co-defendants. We disagree with defendant's contentions and affirm.
The wiretap on the cellular telephone in question took place between December 24, 1991 and March 22, 1992. Defendant essentially argues that cellular telephones were brought under the ambit of the Federal Wiretap Act in 1986 when Congress passed the Electronic Communications Privacy Act (ECPA). He further contends that the "Special Rule" adopted by Congress in connection with the ECPA gave the states two years thereafter to enact conforming legislation. Inasmuch as New Jersey did not promulgate conforming legislation until 1993, defendant reasons that New Jersey courts were without the authority to issue a cellular wiretap during the period in question.
We conclude, as did the trial judge, that cellular telephone calls of the kind intercepted in this case were, in fact, covered by the 1968 Act and were unaffected by the ECPA. Our conclusion is supported by the ECPA's legislative history which clearly and unambiguously states that cellular phones were covered by the 1968 Act.
Scanning enthusiasts have argued to the Committee that the mere monitoring of cellular telephone calls should not be illegal. That argument ignores three important realities. First, Congress, in passing the 1968 Wiretap Law already made willful monitoring of such telephone calls illegal when at least part of the conversation is carried by wire....
[S.Rep. 99-541, 99th Cong.2d Sess. reprinted in 1986 U.S.C.C.A.N. at 3561 (hereinafter "1986 Senate Report").]
The corresponding House Report is in agreement:
Cellular telephone calls can be intercepted by either sophisticated scanners designed for that purpose, or by regular radio scanners modified to intercept cellular calls.

*419 The availability of this technology poses a troubling conflict between the technology of surveillance and new techniques of communication using radio. Interception of cellular calls is illegal under current federal law....
[H.Rep. 96-647, 99th Cong., 2d Sess., at 20 (1986).]
We hasten to note that not all cellular calls were protected by the 1968 Wiretap Act. The 1968 Act protected "wire communications," i.e. "any communication made in whole or in part through the use of facilities for the transmission of communications by the aid of wire, cable or other like connection...." 18 U.S.C.A. § 2510(1). Thus, any cellular call that travels, to any extent, over a standard telephone wire or "land line", was therefore protected. United States v. Hall, 488 F.2d 193, 197-198 (9th Cir.1973); Edwards v. State Farm Ins. Co., 833 F.2d 535, 538 n. 5 (5th Cir.1987). However, a call from one cellular phone to another might or might not travel partially over wire. See, 1986 Senate Report at 3563. It was the advent of that technology that created an inconsistency in the law; some cellular calls that traveled over standard telephone wire in part were protected by the 1986 Act while others that travelled purely by radio signals were not. It was that inconsistency that the ECPA remedied when it explicitly brought all cellular communications within the ambit of the Federal Wiretap Act:
This subparagraph [18 U.S.C.A. § 2510(1) (Supp. 1995)] makes clear that cellular communication  whether they are between two cellular telephones or between a cellular telephone and "land line" telephone  are included in the definition of "wire communications" and are covered by the statute.
[1986 Senate Report at 3565.]
Thus, the ECPA did not, as defendant contends, mark the beginning of the Federal Wiretap Act's coverage of cellular phones.
State wiretap laws that were modeled on the federal act when ECPA was passed already covered cellular phones, and did not need to be amended. Thus, such state laws were not affected by the Special Rule contained in 18 U.S.C.A. § 2510 of the ECPA. The actual purpose of the Special Rule was to allow states that had already passed the wiretap laws addressing electronic communications to bring those laws into procedural conformity with ECPA, and thereby make their courts able to issue tap orders for *420 E-mail and the like. This is what is meant by the passage in the 1986 Senate Report which defendant incompletely quotes in his brief:
This special effective date rule is necessary because the provisions of chapter 119 of title 18 [i.e. ECPA] supersede state laws with respect to electronic communications. Under chapter 119, the state must enact statutes which are at least as restrictive as the provisions of chapter 119 before they can authorize their state courts to issue interception orders.
[1986 Senate Report at 3589.]
ECPA's Special Rule, then, is irrelevant to the authorization of the cellular telephone taps in this case.
In this case, calls to and from the cellular phone which were the subject of the warrant travelled in part over "land lines" or wires. Thus, the tap of this cellular phone was, at a minimum, within the purview of the 1968 Wiretap Act which covered cellular calls that traveled in part over land lines. More specifically, the New Jersey Wiretap Act applicable when this tap occurred defined "wire communication" substantially the same as the federal act. N.J.S.A. 2A:156A-2a; 18 U.S.C.A. § 2510(1). The fact that the New Jersey Act was amended in 1993 is relevant only to the interception of "electronic communications." That is, as the Legislature recognized,
[u]nder current federal law, "electronic communications" are a form of protected communications. Consequently, at the present time, [i.e. prior to the 1993 amendment], New Jersey law enforcement officers are not permitted to intercept electronic communications.
[N.J.S.A. 2A:156A-2, (Supp. 1995, Assembly Judiciary, Law and Public Safety Committee Statement).]
Defendant next contends that the wiretap judge's order authorizing the tap of the cellular phone in question was invalid because the order did not and could not conform to the requirement that the order state the location of the phone to be tapped. N.J.S.A. 2A:156A-12c. This is so because a cellular phone has no fixed location.
The wiretap judge's order specified "... mobile cellular telephone facility (212) 331-9944, listed to Kyriakaos Lyristis, 36 Harrison Street, Clark, New Jersey...." The fact that the phone *421 itself likely was not at Harrison Street over the 90 days of the tap is immaterial. The authorization order specified the required information to the extent practicable in the circumstances, which is all that is required. See State v. Pemberthy, 224 N.J. Super. 280, 299, 540 A.2d 227 (App.Div.), certif. denied, 111 N.J. 633, 546 A.2d 547 (1988) (a wire tap authorization order that did not specify hours of operation was valid when dealing with an ongoing criminal conspiracy, despite N.J.S.A. 2A:156A-12 requiring "efforts ... to reduce the hours of interception authorized by said order."); State v. Sidoti, 120 N.J. Super. 208, 213-214, 293 A.2d 678 (App. Div. 1972) (a wiretap authorization that did not specify the hours of interception was held valid because bookmaking, the crime under investigation, defied any such specificity).
We acknowledge that the part of the statute addressed by Pemberthy and Sidoti speaks in terms of "reasonable efforts" and practicability, while the requirement that the authorization order specified location does not. We conclude that the distinction is immaterial. The United States Supreme Court, in interpreting the Federal Wiretap Act, has held that substantial compliance with the authorization order requirements is all that is required. United States v. Chavez, 416 U.S. 562, 574-575, 94 S.Ct. 1849, 1856, 40 L.Ed.2d 380, 392 (1974) (the mis-naming of the official who authorized the wiretap did not render the authorization order invalid).
Finally, we find nothing in the legislative history of the 1993 New Jersey Wiretap Act that requires a contrary interpretation of the former statute. In our view, the statement relied upon by defendant refers to procedures for intercepting oral communications, not wire communications. N.J.S.A. 2A:156A-12c; 2A:156A-9g(1).
Thus, we are satisfied that Judge Wertheimer was correct in denying defendant's motion to suppress the wiretap evidence against him.
Although defendant was sentenced in accordance with his plea agreement, he moved for a reduction of sentence, claiming that his *422 sentence was excessive based upon an alleged disparity between his sentence and those of certain of his co-defendants. The motion was denied.
Our scope of review when disparity is alleged does not appear to be any different from a case in which a defendant maintains that the sentence imposed was excessive. State v. Lee, 235 N.J. Super. 410, 414, 563 A.2d 51 (App.Div. 1989). Further, where the defendant receives the exact sentence that he bargained for, an appellate court will not upset the sentence if it is "consistent with the Code's Guidelines[.]" Id. at 415, 563 A.2d 51. Thus, we will not reduce a negotiated sentence on appellate review absent a finding of a clear abuse of judicial discretion. State v. Gardner, 113 N.J. 510, 516, 551 A.2d 981 (1989); State v. Sainz, 107 N.J. 283, 526 A.2d 1015 (1987). As the Supreme Court stated in State v. Ghertler, 114 N.J. 383, 555 A.2d 553 (1989), the test "is not whether a reviewing court would have reached a different conclusion on what an appropriate sentence should be; it is rather whether, on the basis of the evidence, no reasonable sentencing court could have imposed the sentence under review." Id. at 388, 555 A.2d 553.
We have reviewed the sentencing transcript and the motion for reconsideration in light of these principles. We are satisfied that Judge Wertheimer's findings with respect to the original sentence and the motion for reconsideration were grounded in competent evidence, and that he applied correct legal principles in exercising his discretion. State v. Roth, 95 N.J. 334, 363-365, 471 A.2d 370 (1984). Accordingly, defendant's sentence is affirmed.
The judgments under review are affirmed in all respects.